UNITED STATES of America,
Appellee,

v.

Earl Gilbert KIRKMAN, Appellant.

UNITED STATES of America,
Appellee,

v.

G. G. SHAW and W. E. Draper,
Appellants.

Nos. 13860, 13861.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 5, 1970.

Decided May 26, 1970.

748

E. L. Alston, Jr., Greensboro, N. C. (Alston, Pell, Pell & Weston, Greensboro, N. C., on the brief), for appellant in No. 13,860. Robert S. Cahoon, Greensboro, N. C., for appellants in No. 13,861. William L. Osteen, U. S. Atty. (Richard M. Dailey, Jr., Asst. U. S. Atty., on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BOREMAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge.

E. G. Kirkman, as principal, and G. G. Shaw and W. E. Draper, as sureties, appeal from the district court's order denying their motions to set aside, or remit, the forfeiture of Kirkman's $25,000 criminal court appearance bond. See Fed.R.Crim.P. 46(f) (2) and (4). We reverse as to Shaw and Draper and vacate and remand with instructions as to Kirkman.

Kirkman was charged with knowingly receiving and possessing goods stolen from interstate shipment in violation of 18 U.S.C. § 659 (1964), as amended (Supp. IV 1965–68). On March 28, 1968, subsequent to his arrest, Kirkman, as principal, and Shaw and Draper, as sureties, executed an appearance bond before a United States Commissioner in the amount of $25,000. Shaw is a farmer, who certified his net worth to be $50,000, on the basis of his ownership of 218 acres of farmland in Guilford County. Draper is Kirkman's son-in-law (affianced to Kirkman's daughter at the time he signed the bond). He had no assets at the time the bond was executed and has none now. Shaw and Draper are not commercial bondsmen. They agreed to become sureties on the bond only out of friendship for Kirkman (and Draper's relationship to Kirkman's daughter).

Kirkman's trial was scheduled for August 12, 1968, but he failed to appear.[1] Because of his nonappearance, his bond was forfeited, and a warrant was issued for his arrest. On November 7, 1968, the district court entered default judgment on the bond against Kirkman, Shaw and Draper. On November 12, 1968, the district court heard and denied motions to set aside or remit the forfeiture.

1. Kirkman was subsequently tried and convicted. His conviction was affirmed by this court and he is now serving his sentence. United States v. Kirkman, 409 F.2d 229 (4th Cir. May 5, 1969).

Kirkman's excuse for failing to appear was that he had been injured in an automobile wreck the night before the trial and was hospitalized and unable to attend court. The court found that Kirkman had faked the automobile accident and feigned injury for the purpose of gaining entry to the hospital and delaying his trial.

The district judge apparently rejected Kirkman's version of the asserted wreck and injury for several reasons. The driver of the other vehicle was a casual acquaintance of Kirkman. Dr. Lewis, who hospitalized Kirkman, was his longstanding friend and had hospitalized him on a previous occasion just before a trial scheduled in state court. (It turned out that nothing was actually wrong with Kirkman on that occasion.) The police who examined the cars at the scene of the "accident" testified positively that Kirkman's car was scarcely damaged at all.

Kirkman, Shaw, and Draper offered persuasive medical testimony[2] tending to support Kirkman's assertion that he was injured and hospitalized as a result of an automobile collision. They also offered evidence of more extensive damage to Kirkman's automobile than indicated by the police testimony.[3]

■ The findings of the district judge turn on matters of weight and credibility. His ultimate finding that Kirkman pretended injury to delay the trial is supported by substantial evidence and is not clearly erroneous. Thus, it follows that Kirkman was inex-

cusably absent when his case was called for trial and his bond properly forfeited as required by Rule 46(f) (1), Fed.R. Crim.P.

■ Whether the district court should have remitted the forfeiture is another question. Rule 46(f) (2), Fed. R.Crim.P. The procedure followed in requiring Kirkman to execute an appearance bond with sureties violated the Bail Reform Act of 1966, 18 U.S.C. § 3141 *et seq.* (1964), as amended (Supp. IV 1965–68). That Act was meant to displace what occurred here and had "the goal of eliminating the evils which are inherent in a system predicated solely upon monetary bail." 1966 U.S. Code Cong. & Adm. News, 89th Cong., 2d Sess., pp. 2293, 2299. The statute does not simply suggest to United States Commissioners and other judicial officers that they may depart from the entrenched bail bond practice. It commands that the practice be abandoned, except as a next to last alternative. Section 3146 is not precatory. It requires that any persons (except one charged with a capital felony) *"shall"* be released pending trial on personal recognizance or upon execution of an *unsecured* appearance bond, unless the judicial officer determines that such a release will not reasonably assure appearance.

But even when that determination is made, the Congress requires exhaustion of other solutions before there can be resort to the old bail bond with sureties. The hierarchy of congressional preference, paraphrased, is: [4]

---

2. A medical specialist testified Kirkman could have received his injury from the wreck, as alleged.

3. Kirkman contends he was driving a Comet and showed extensive damage to its rear end. The police testified he was driving a Fairlane.

4. The full text of § 3146(a) and (b) reads, as follows:

   3146. Release in noncapital cases prior to trial.

   (a) Any person charged with an offense, other than an offense punishable

by death, shall, at his appearance before a judicial officer, be ordered released pending trial on his personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the judicial officer, unless the officer determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person as required. When such a determination is made, the judicial officer shall, either in lieu of or in addition to the above methods of release, impose the first of the fol-

(1) place the person in the custody of one who agrees to supervise him;

(2) place restrictions on his travel, associations, or place of living;

(3) require execution of an appearance bond and deposit of a sum, not to exceed 10 per cent of the amount of the bond, as security for performance;

(4) require execution of a bail bond with sufficient solvent sureties, or deposit of cash in lieu of the bond;

(5) impose any other condition deemed reasonably necessary to assure appearance.

Moreover, the Congress has offered guidelines to be applied in determining whether the preferred release methods (personal recognizance or unsecured appearance bond) should be denied in favor of one or more less favored alternatives. Among other factors to be taken into account are: (1) the nature of offense, (2) the family ties of the accused, and (3) his length of residence in the community.[5]

Applying these guidelines to Kirkman, it is apparent that he was not charged with a type of crime entailing a high degree of risk of failure to appear, e. g., bank robbery or interstate transportation of a stolen motor vehicle. The record suggests that Kirkman was not a young man without family ties, but, instead, was married and living with his family, and that he had at least one child residing nearby. Apparently Guilford County was "home" and he had lived there most of his life. These factors strongly suggest the inappropriateness of requiring bail bond with sureties, especially in view of the stated congressional policy.

We are left to wonder whether faithful implementation of the Bail Reform Act might not have resulted in the release of Kirkman on his own personal recognizance, or, if not, upon compliance with one or more of the lesser conditions, rather than the disfavored bail bond with personal sureties. Certainly it would appear, at the very least, that Kirkman would have qualified for the privilege of depositing in the registry of the court a sum not to exceed ten percent of the $25,000 base amount of the bond. The forfeiture of such an amount ($2,500) would also appear to bear a more reasonable relationship to the expense that may have been incurred by the government in regaining custody of Kirkman and in bringing him to trial.

■■ We hold that a United States Commissioner or other judicial officer is not relieved of his obligation to faithfully implement the Bail Reform Act by the acquiescence of a prisoner. But to a

---

lowing conditions of release which will reasonably assure the appearance of the person for trial or, if no single condition gives that assurance, any combination of the following conditions:

(1) place the person in the custody of a designated person or organization agreeing to supervise him;

(2) place restrictions on the travel, association, or place of abode of the person during the period of release;

(3) require the execution of an appearance bond in a specified amount and the deposit in the registry of the court, in cash or other security as directed, of a sum not to exceed 10 per centum of the amount of the bond, such deposit to be returned upon the performance of the conditions of release;

(4) require the execution of a bail bond with sufficient solvent sureties, or the deposit of cash in lieu thereof; or

(5) impose any other condition deemed reasonably necessary to assure appearance as required, including a condition requiring that the person return to custody after specified hours.

(b) In determining which conditions of release will reasonably assure appearance, the judicial officer shall, on the basis of available information, take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

5. See footnote 4, *supra*.

considerable extent Kirkman is the author of his own difficulty. Apparently he did not protest imposition of the bond with sureties. His counsel on appeal responded to an inquiry from the bench as follows:

We were in a position to post a $25,-000 bond and didn't feel like seeking relief from this court in that regard. * * * Arguing with the commissioner, I thought, would have been a futile act, when I was in a position to do what he said; and when in China I try to do as the Chinese.

Under these circumstances we think partial rather than total remission of the forfeiture will sufficiently vindicate the Act and accord to Kirkman substantial justice.

Shaw and Draper present an entirely different problem. Unlike Kirkman, they were not represented by counsel when they signed the bond as sureties. It is absurd to suggest, even if they had ever heard of the Bail Reform Act, that it was their duty to urge upon the United States Commissioner his obligation to implement it. Friends and relatives have been among the collateral victims of the old bail bond system sought to be eliminated by the Congress. Shaw and Draper are within that category, and, again, we are left to wonder if it was not wholly unnecessary under the Act that they be called upon to bind themselves to a $25,000 obligation in order to prevent ther friend and Draper's prospective father-in-law from being immediately imprisoned. It is hard to understand why Draper was accepted as a surety. He filed no affidavit of net worth and apparently owned no property.[6]

The United States urges upon us that Shaw and Draper should be held to their obligation because they failed to resort to a surety's time-honored right of self-help. It is difficult to conceive what they could have done to obtain Kirkman's presence at trial. It does not appear that they knew of and had opportunity to prevent him from conspiring with others to "fake" an automobile accident and subsequent hospitalization. Once he had been hospitalized they could scarcely be expected to drag him from his apparent sickbed in order to bring him to court. The district judge noted in his opinion that Shaw and Draper "made no offer to have the defendant physically examined to determine whether his alleged injuries were real or imaginary, or to otherwise cooperate with the court in any respect." But very soon after his failure to appear Kirkman was placed under guard in the hospital and, upon discharge from the hospital, was kept in jail until he was tried. An examination by an independent medical specialist was accomplished. It is difficult to see what Shaw and Draper could have done that would have been helpful to the court.

We recognize that forfeiture and remission are matters within the sound discretion of the district judge. See, e. g., Brown v. United States, 410 F.2d 212 (5th Cir. 1969); United States v. Egan, 394 F.2d 262 (2d Cir. 1968), cert. denied, 393 U.S. 838, 89 S.Ct. 116, 21 L.Ed.2d 109 (1968); Sifuentes-Romero v. United States, 374 F.2d 620 (5th Cir. 1967); Fed.R.Crim.P. 46(f) (2). On review the question for this court is whether the district judge abused his discretion in refusing to order remission. See, e. g., Bennett v. United States, 368 F.2d 7 (8th Cir. 1966); United States v. Peerless Ins. Co., 343 F.2d 759 (2d Cir. 1965), cert. denied, 382 U.S. 832, 86 S.Ct. 73, 15 L.Ed.2d 76 (1965); United States v. D'Argento, 339 F.2d 925 (7th Cir. 1964); United Bonding Ins. Co. v. United States, 329 F.2d 152 (5th Cir. 1964). The legal standard we must apply to the exercise of discretion by the district court is whether justice requires the enforce-

---

6. 18 U.S.C. § 3146(a) (4) states that the judicial officer may "require the execution of a bail bond with sufficient *solvent* sureties, or the deposit of cash in lieu thereof * * *." (Emphasis added.)

ment of the forfeiture. United States v. D'Argento, *supra*; Fed.R.Crim.P. 46(f) (2). Under the circumstances present in this case, including the failure of the United States Commissioner to comply with the Bail Reform Act, the inability of the sureties to prevent Kirkman from conspiring with others to avoid trial, and the immediate "capture" of Kirkman in the hospital, we conclude that justice does not require the enforcement of the forfeiture as to Shaw and Draper. We hold that the district court abused its discretion in refusing to set aside the forfeiture as to them.

With respect to Kirkman, we think justice requires partial remission of the forfeiture.[7] Kirkman never attempted to escape. He never left the community. There was no difficulty in finding him. Since he was subsequently tried, convicted, and sentenced, the only harm resulting from his failure to appear was the cost of the delay to the government, including the expense of guarding his hospital room, and the inconvenience to the court in undertaking to determine if in fact he was injured. The purpose of bail is to secure the presence of the defendant at trial. United States v. Nebbia, 357 F.2d 303 (2d Cir. 1966); Smith v. United States, 357 F.2d 486 (5th Cir. 1966); United States v. D'Argento, 339 F.2d 925 (7th Cir. 1964). Forfeitures are not properly ordered for the purpose of enriching the government or to punish a defendant.[8] See Paris v. United States, 137 F.2d 300 (4th Cir. 1943). See also United States v. Nebbia, *supra*; Smith v. United States, *supra*; United States v. D'Argento, *supra*. We think that forfeiture ought to bear some reasonable relation to the cost and inconvenience to the government of regaining custody and again preparing to go to trial.

On remand the district court will, as to Kirkman, remit $22,500 of the bond forfeiture. Upon payment of $2,500, the obligation of the bond will be discharged. As to Shaw and Draper, full remission will be entered and their obligation cancelled.

As to Shaw and Draper, reversed.

As to Kirkman, vacated and remanded.

---

7. *Compare* Bennett v. United States, 368 F.2d 7 (8th Cir. 1966), in which forfeiture of bond in the amount of $25,000 was not disturbed. The facts in Bennett arose prior to the effective date of the Bail Reform Act.

8. 18 U.S.C. § 3150 (Supp. IV 1965–68) provides for punishment for willful failure to appear. A person so charged is entitled to trial by jury.