UNITED STATES of America,
Plaintiff-Appellee,

v.

George B. PARR, Defendant,

Clinton Manges, Movant-Appellant,

Evangelina P. Parr, etc.,
Intervenor-Appellant.

No. 75–3268.

United States Court of Appeals,
Fifth Circuit.

Oct. 14, 1977.

---

Arthur Mitchell, Jan W. Fox, Austin, Tex., Robert B. Wallis, Houston, Tex., for Manges.

R. E. Lopez, Jr., Alice, Tex., for Parr.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, George A. Kelt, Jr., William L. Bowers, Jr., Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before JONES, WISDOM and GOD-BOLD, Circuit Judges.

JONES, Circuit Judge:

George B. Parr was charged with several income tax related offenses. Bail was fixed at $50,000. The order was for "cash or surety." An appearance bond was filed. The bond was a surety bond in form but no surety was named in the bond and it was signed only by Parr. At the time the bond was tendered to and approved by the Deputy Clerk of the District Court for the Southern District of Texas at Corpus Christi it was accompanied by a cashier's check in the amount of $50,000, which had been purchased by the appellant, Clinton Manges. The cashier's check was sent by the Deputy Clerk to the Clerk in Houston with a memorandum which stated that the check represented the full amount of the bond in the Parr case and that "Upon disposition of this case, deposit should revert to Mr. Clinton Manges, Freer, Texas."

Parr was tried, convicted and sentenced. He appealed. An order required an additional appearance bond of $25,000. Parr executed a bond in this amount. Manges delivered a cashier's check for the amount of the additional bond which was forwarded as was the other with the provision that "upon disposition of the case" the deposit should revert to Manges. The conviction and sentence was affirmed by an opinion dated March 24, 1975. *United States v. Parr*, 5th Cir. 1975, 509 F.2d 1381. On March 28, 1975, prior to the issuance of the mandate and judgment of the Court of Appeals, the United States Attorney filed a motion for forfeiture of the bond on the ground that Parr had become a danger to other persons and the community. An order was entered on March 31, 1975, directing Parr to appear before the court at four o'clock on that day to show cause whether his bond should be continued. The order was served on Parr's counsel who informed Parr. At four o'clock Parr did not appear. The court recessed for an hour. At five o'clock Parr was not present nor had he been seen. The court entered an order of forfeiture of the bond. A bench warrant was issued for Parr's arrest. The court recessed until two o'clock the following day; the judge saying that if Parr then appeared consideration would be given to setting aside the forfeiture.

The manhunt began. United States Marshals, FBI agents, Federal Internal Revenue agents and local law enforcement officers began their search. At about 11:20 the

following morning Parr's body, dead from a self-inflicted gunshot, was found on his ranch. The court convened at two o'clock, took note of Parr's death, did little else and adjourned. The government moved for judgment of default. Manges sought remission and payment to him. The widow of Parr, who was executrix of his estate, intervened to assert that the transaction was in substance a loan from Manges to Parr and that any remission should be paid to Parr's estate to which Manges should look for reimbursement.

A hearing was had some days later. One of Parr's counsel testified as to the incidents so far as known to him, preceding Parr's disappearance. It was stipulated that the cashier's checks were purchased with funds of Manges. An Assistant United States Attorney made a lengthy statement to the court, which in part was of views as to the law and in part of hearsay or conjectural statements of fact. It was urged that because the fine imposed upon Parr in the criminal conviction did not survive as an obligation of his estate, the amount of the fine should be considered in fixing the amount of the remission.

The court was asked to consider the expense of the search for Parr made by the FBI, "the agents of the Department of the Treasury, many local law enforcement agencies, including the use of the aircraft and other means to search." It was suggested that the court should consider the damage resulting to the United States because, so it was said, he could not now be punished or rehabilitated.

Government counsel stated that "Perhaps Mr. Parr's act of suicide was, in fact, an act of a person who was not mentally sound." This was suggested, not as bearing on the willfulness of Parr's failure to appear but as an element of damage to the United States resulting from the failure to punish and rehabilitate him.

The court entered an order for the remission of $35,000 and the forfeiture of $40,000. The remission of $35,000 was payable to Manges and the right, if any, of the Parr estate was left for decision in another cause before another court.

In its order the court recognized the necessity of considering the interests of the successors in interest of Parr, of the government and of the court. The court commented on the failure of the movants for remission to offer evidence other than of the death of Parr as grounds for remission. After observing that the remission was one for the exercise of great discretion, the court stated that there were three basic facts for consideration in determining the amount of the remission; first, "the clear-cut willfulness on the part of the defendant in failing to appear, * * * second, there is the great expense to the government in terms of dollars and man-hours expended in trying to find the defendant and * * * finally, there is the necessity on the part of each court to insure that its orders are obeyed and that the terms of all bonds * * * are met."

There is an outset question as to the nature and effect of the deposits made by Manges with the court. There was neither a cash bond nor a surety bond. There was a cash deposit in lieu of a bond. The funds were received into the registry of the court with the agreement and upon the condition that the funds would be returned to Manges upon disposition of the case. Where, as here, there is an unauthorized departure from established procedures, problems are presented. Was there a disposition of the case upon the death of Parr which requires the entire amount of the funds deposited be repaid to Manges in compliance with the agreement made for the court by its clerk and under which the deposit was made? The initial consideration of this question should be by the district court.

In considering the factors in determining the amount of the remission the district court stated, "First, there is the clear-cut willfulness on the part of the defendant in failing to appear." As has been noted the attorney for the government expressed a belief that Parr might have been insane. The Supreme Court has said that a sane man would not commit suicide. *Connecticut Life Insurance Co. v. Akens*, 150 U.S.

468, 14 S.Ct. 155, 37 L.Ed. 1148. The government counsel should have suggested and the court should have required an inquiry as to whether or not Parr was insane in the taking of his life. 44 C.J.S. Insane Persons § 5, p. 52. If he was insane that fact should be considered in connection with the remission of the forfeiture. 8 C.J.S. Bail § 92c, p. 264. Insanity might very well negate clear-cut willfulness.

As a second ground the court stated "there is the great expense to the government in terms of dollars and manhours expended in trying to find the defendant." There was no evidence as to the extent of the "dollars and manhours expended." It seems desirable to consider whether the time of Internal Revenue agents should be considered unless it be shown that they could have made a lawful arrest of Parr if they had found him. It would seem that the time of local law enforcement officers with their aircraft should not be reckoned as items of federal expense in the absence of a showing that their activities were a charge against the United States for which reimbursement would be made.

In considering the dollars and manhours expended it may be that the effectiveness of such expenditures should be questioned. It is suggested that Parr's body was not found by any of the large body of officers but, on his own property, by one unconnected with law enforcement.

The final element which the district court took into account was the necessity to insure that the orders of the court are obeyed and that the terms of bonds are met. We do not suppose that the district court considered, as was urged by government counsel, that the fine, which did not survive as an obligation of Parr's estate, should nevertheless be included in fixing the amount to be remitted. We do not know whether the district court believed, as government counsel contended, that the cost to the government of a large and expensive trial was to be reckoned in the exercise of the discretion in determining the amount of the forfeiture. Since these matters were so strongly urged it seems desirable that the court indicate the extent, if any, of their influence in the exercise of the court's discretion.

It does not appear whether the court gave any effect to government counsel's notion that the bond money should be used as a balm to soothe the disappointment resulting from the inability to punish and rehabilitate Parr.

Government counsel referred to "the frustration of a rather major and extremely expensive law enforcement effort." Neither frustration nor its kinsman vindictiveness should be of weight in tipping the scales by which the elements of the court's discretion is weighed.

There are, in this opinion, a number of questions posed which are not decided. They should be answered, in the first instance, by the district court. They are, in large measure, the matters and things which form, in part, the end result of the exercise of judicial discretion.

There are, in this opinion a number of questions raised for the first time. Matters are discussed which were not, perhaps, considered by the parties or the district court. Justification for so doing is that the principal obligor is no longer before the court and because the court itself is, in a sense, a party in interest. It seems desirable that the district court take another look. So that this may be done the court's order will be vacated and the cause remanded for further proceedings. The remand is made by this court in full recognition of the discretion vested in the district court. The district court is aware, as is this court, that care must be taken to see that whatever must be done is not overdone.

VACATED and REMANDED.