**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Heniz Jurgen HESSE, Defendant,**

**R. P. Kelley, Movant-Appellant.**

**No. 77–3360
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

July 20, 1978.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

John Allen Curtis, Dallas, Tex., for movant-appellant.

Kenneth J. Mighell, U. S. Atty., William O. Wuester, III, Asst. U. S. Atty., Fort Worth, Tex., Shirley Baccus-Lobel, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and COLEMAN and VANCE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This is an appeal by one who gambled in a high-risk game and lost. Appellant R. P. Kelley (or Kelly), the surety of an appearance bond in the amount of $200,000, claims that the District Court erred in granting the Government's motions for default and bond forfeiture when the defendant and principal, Heinz Hesse, failed to attend his sentencing after entering a guilty plea. The District Court found that the terms of the bond contract had been breached and refused to remit appellant's obligation to pay the penalty.[1] We agree that the appellant lost his gamble fair and square and affirm the District Court.

Heinz Jurgen Hesse was arrested on December 15, 1976, pursuant to an SEC criminal complaint charging that he engineered a large-scale scheme to defraud purchasers of securities in violation of the Securities Act of 1933, 15 U.S.C. § 77q(a).[2] Hesse appeared before a magistrate, who issued an Order Specifying Methods and Conditions of Release. The order set a cash surety bond in the amount of $200,000.[3] Hesse sought to reduce the bond first by moving before the magistrate, then appealing to the District Court and to this Court. Each tribunal rejected Hesse's motions, finding that the large sum was required by several factors that made Hesse's continued presence in the area open to question.

First, Hesse was a citizen of the Federal Republic of Germany. He did maintain a residence in Dallas, Texas, but also stated

1. F.R.Crim.P. 46(e) provides:

 (1) **Declaration.** If there is a breach of condition of a bond, the district court shall declare a forfeiture of the bail.

 (2) **Setting Aside.** The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture.

 (3) **Enforcement.** When a forfeiture has not been set aside, the court shall on motion enter a judgment of default and execution may issue thereon. By entering into a bond the obligors submit to the jurisdiction of the district court and irrevocably appoint the clerk of the court as their agent upon whom any papers affecting their liability may be served. Their liability may be enforced on motion without the necessity of an independent action. The motion and such notice of the motion as the court prescribes may be served on the clerk of the court, who shall forthwith mail copies to the obligors to their last known addresses.

 (4) **Remission.** After entry of such judgment, the court may remit it in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision.

 Kelley sought relief under subsection (2).

2. Hesse was president and chairman of the board of HJH, Inc., which, with several wholly owned subsidiaries, owned or leased oil and gas properties. The companies were primarily engaged in selling fractional interests in these properties. The SEC complaint and the subsequent indictments alleged that Hesse, through HJH, Inc., sold interests in the properties for amounts far in excess of their actual value by misrepresenting their present and potential production. The facade was kept intact by the device of paying earlier investors money received from subsequent investors and falsely representing that the money came from the production of oil and gas.

3. The order also required Hesse to notify his attorney and the United States Attorney of any change of address within the county; prohibited Hesse from moving his residence outside the county or traveling outside the country without written permission from the Court, and required Hesse to keep his attorney informed of his whereabouts at all times. Hesse was also required to surrender his passport. [R., Vol. I, at 27.]

his residence as located in Zurich, Switzerland, and was in the United States as a resident alien on a permanent visa. Second, Hesse had no family connections in the Dallas area, and his business connections appeared to be limited to front operations maintained as part of the allegedly fraudulent schemes. Finally, the evidence—testimony by government witnesses detailing aspects of the alleged fraud, giving information as to Hesse's international bank accounts, and indicating that Hesse had recently transferred large sums of money to his personal accounts—tended to show that Hesse had been engaged in an extensive fraudulent operation to sell securities, that the operation had collapsed, and that Hesse had no incentive to remain in the area and could be expected to "abscond."

On January 18, 1977, after a hearing, the District Court approved Kelley as the surety of the bond, to be posted by a $100,000 surety bond and $100,000 in cash. On the same date, Hesse was ordered released from prison, subject to requirements that he remain within the county unless permission was given to leave and that he keep his attorney informed of his whereabouts at all times. On February 10, 1977, Hesse was indicted with six others for fraud in the sale of securities, for transporting stolen money and securities in interstate commerce, for using the mails to accomplish the scheme to defraud, and for conspiracy. The indictment contained the same charges of violations of 15 U.S.C. § 77q(a) that had been asserted in the SEC criminal complaint, and added charges of violations of 15 U.S.C. § 77x, and 18 U.S.C. §§ 2, 1341, and 2314. A superseding indictment was filed on April 26. On May 27, Hesse entered pleas of guilty to one count of securities fraud and one count of mail fraud. He failed to appear for sentencing on June 24, and a warrant for his arrest, with bail set at $1,000,-000, issued immediately.

The surety advances two arguments in favor of release from the bond obligation. Both arguments have already been unsuccessfully made before the District Court. First, Kelley asserts that the bond was given only in the case filed before the magistrate. The bond set by the magistrate required Hesse to comply with the conditions of release in "the above styled and numbered cause," and to "present himself to abide any judgment entered against him in this cause." Kelley contends that the later indictments, to which Hesse pleaded guilty and under which he was to be sentenced, constitute a different "cause." No new order setting bond was filed after the indictments were returned. Therefore, Kelley argues that Hesse's failure to appear at his sentencing does not constitute a breach of the bond for which forfeiture can be declared. Second, Kelley contends that he did not know of or consent to the increased risk resulting from the filing of the indictments after he had agreed to act as surety.

The principles that govern a surety's obligations have been clearly stated for this Circuit:

An appearance bond is nothing more than a contract between the government on one hand and a principal and his surety on the other. *United States v. Jackson,* 465 F.2d 964 (10th Cir. 1972). The extent of the undertaking of the surety depends upon the wording of the agreement as interpreted within the framework of general federal principles of suretyship and contract law.[2] As a general rule the terms of a bail contract are to be construed strictly in favor of the surety, who may not be held liable for any greater undertaking than he has agreed to. *United States v. Eisner,* 323 F.2d 38, 43 (6th Cir. 1963). However, "[l]ike any other contract a bail bond should be construed to give effect to the reasonable intentions of the parties." *United States v. Gonware,* 415 F.2d 82, 83 (9th Cir. 1969).

*United States v. Miller,* 5 Cir., 1976, 539 F.2d 445, 447. The surety here agreed that Hesse would:

". . . appear before any magistrate or judge of the U.S. District Court for the Northern District of Texas, or the U.S. District Court where *the cause* is pending

(if other than the Northern District of Texas) and shall appear in any U.S. District Court to which the defendant may be removed or the cause transferred at such times and places as may be directed, and shall present himself to abide any judgment entered against him in this cause." (Emphasis supplied)

We must examine the relationship between the case before the magistrate and the subsequent indictments to determine if they can be considered the same "cause" within the meaning of the bond.

The District Court's memorandum opinion proceeded on the premise that no new order setting bond was filed after the indictment was returned. We would point out, however, that when Hesse was arraigned on February 17, 1977, Judge Hughes sought the Government's recommendation as to a bond, learned that a $200,000 bond had been previously entered, heard the Government ask that the bond for Hesse be continued in the same amount, and agreed that it should not be reduced.[4] [Government Ex. 10.] The transcript of the arraignment thus reveals that judicial action was taken to continue the bond that was entered by the magistrate. Kelley did not attend the arraignment, but the record demonstrates that he received notice that the indictment had been filed and that the arraignment had been scheduled.[5]

Kelley attempts to prove that the cause before the magistrate and the cause of the subsequent indictments are distinct by directing our attention to the docket sheet history of the proceedings. The case before the magistrate, in which bond was set, was assigned District Court No. CR–77–00001 when Hesse appealed the order setting the bond. The charges returned in the February 10, 1977 indictment were assigned case No. CR–3–77–35. On February 10, the Clerk of the District Court made the following notation on the docket sheet of the case filed before the magistrate: "This case closed—Bond and related Magistrate papers placed in CR–3–77–35 at time indictment filed." The first page of the docket sheets in the record before this Court reads "Transferred from CR–3–77–00001," an entry apparently made shortly after February 10. Testimony at the forfeiture hearing indicated that it was common practice in the Clerk's Office to merge any pending magistrate's papers with the file begun when an indictment is returned. Usually, a District Court number is not assigned until such a file is opened. This case received its number (CR–3–77–00001) at an earlier stage, when Hesse appealed from the magistrate's order setting the bond.

The District Court Judge cut through this confusion and correctly held that "the change of numbers cannot alone result in a new cause." The numbering and merging of files, and the transferring of papers between files, are routine clerical processes that are of small assistance in determining whether the proceedings involved constitute one or more causes. The decisive point is that the substance of the charges in the SEC criminal complaint was the same as those contained in the later indictments and that the indictments did not increase the risk undertaken by the bondsman.

Appellant claims that because the SEC complaint related solely to securities fraud, and the later indictments named additional defendants and contained additional charges—mail fraud and the movement of people, money, and securities in interstate commerce pursuant to a fraudulent scheme—the causes are distinct. He therefore asserts that the bond only covered the SEC criminal complaint. This is an incorrect emphasis on form over substance. As the District Court pointed out, all the charges in the later indictments "were carved from the same transactions as the charges before the magistrate." Kelley's argument would be valid only if the indict-

---

4. Pursuant to the Government's suggestion, the Judge allowed Hesse's six codefendants leave to file personal recognizance bonds.

5. Kelley was sent a carbon copy of a letter written by the United States Attorney to Hesse's attorney advising of the filing of the indictment and of the date of the arraignment. [R., Vol. I, at 329.]

ments can be said to have increased the bondsman's risk.

We agree with the District Court that no additional, unconsented to risk was created by the indictments. First, the SEC complaint outlined the fraudulent scheme to sell securities that formed the basis for the later indictments. The magistrate's order setting the bond, and the subsequent orders denying Hesse's motions to reduce the amount, gave Kelley information as to the likelihood that indictments would follow and that Hesse would seek to flee. It is implausible that Kelley did not expect the indictments: the SEC complaint charged an extensive scheme that by its very nature made prosecution—on multiple felony counts and of multiple defendants—likely. Criminal prosecution could not begin until an indictment was returned. Hesse himself appears to have expected to be indicted.[6] These facts alone gave Kelley ample information as to the nature and extent of the risk he was insuring at the time he entered the bond contract.

The District Court properly looked to Kelley's own conduct as evidence of his understanding of the risk undertaken in the bond agreement. There is evidence, detailed above, that Kelley received actual notice of the arraignments after the indictments were returned and that he could have appeared and reevaluated his obligation, but chose not to do so. Instead, Kelley treated his obligation as a continuing one, employing a third party to make daily checks on Hesse until the date of the sentencing, when Hesse disappeared.

 We hold that the District Court's examination of the scope of the bond and of the risks undertaken by the bondsman to be without error. Although Kelley does not directly raise the issue, we also find the record more than sufficient to support the District Court Judge's implicit decision that justice warranted that the bond be forfeited. It is the law in this Circuit that the standard of review for a District Court's refusal to remit part or all of a bond forfeiture is whether that Court abused its wide discretion. *United States v. Bass,* 5 Cir., 1978, 573 F.2d 258; *United States v. Gray,* 5 Cir., 1978, 568 F.2d 1134; *United States v. Shelton,* 5 Cir., 1971, 444 F.2d 522; *Brown v. United States,* 5 Cir., 1969, 410 F.2d 212, *cert. denied,* 396 U.S. 932, 90 S.Ct. 272, 24 L.Ed.2d 230. Under this standard there is no basis for a contention that the lower court abused its discretion in ordering the forfeiture.[7]

AFFIRMED.

---

**6.** See Defendant's Appeal from Order on Conditions of Release on Bail and Motion to Amend Such Order. R, Vol. I., at 39.

**7.** One of the factors particularly important to the equity of a forfeiture, the status of the bondsman, provides support for the District Court's decision. While Kelley was involved with a business other than bonds, he had frequently acted as a bail bondsman, on occasion posting large amounts. He was obviously aware of his responsibility to produce the defendants and of the monetary risks inherent in his guaranty to do so. He received a $25,000 fee for serving as bondsman for Heinz Hesse.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.