**UNITED STATES of America, Appellee,**

v.

**Joseph Javad MIZANI, Defendant,**

**and**

**Mohammed Mizani, Surety-Appellant.**

**No. 78–6322.**

United States Court of Appeals,
Fourth Circuit.

Argued May 11, 1979.

Decided Sept. 12, 1979.

Joanne F. Alper, Alexandria, Va. (Harvey B. Cohen, Leonard, Cohen, Gettings & Sher, Alexandria, Va., on brief), for appellant.

George P. Williams, Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty., Alexandria, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, FIELD, Senior Circuit Judge, and COPENHAVER, District Judge *.

FIELD, Senior Circuit Judge:

Mohammed Mizani (Mohammed), surety on the appearance bond of Joseph Javad Mizani (Joseph), appeals from an order of the district court denying remission of any

* Honorable John T. Copenhaver, Jr., Southern District of West Virginia sitting by designation.

part of the bond which was forfeited when Joseph absconded.

Mohammed is a naturalized citizen of Iranian birth. On July 22, 1974, his brother, Joseph, an Iranian national who was legally in the United States on a temporary basis, was convicted for distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). Joseph noted an appeal and moved for release on bond pending disposition thereof. Following a hearing in the district court on August 19, 1974, Mohammed executed a surety bond in the amount of $100,000.00 and Joseph was released from custody. On February 19, 1975, Joseph's conviction was affirmed by this court, and thereafter the United States Marshal attempted to take him into custody but was unable to locate him. On January 16, 1976, an order was entered in the district court taking judgment against Mohammed for the amount of the bond, with the provision that he could apply to the court for a credit against the bond should he "be successful in promptly surrendering the said Joseph Javad Mizani to the appropriate authorities."

On December 7, 1977, after Joseph was apprehended in Germany and returned to the United States by extradition, an evidentiary hearing was held pursuant to Criminal Rule No. 46(e)(4) upon the request of Mohammed to reduce his obligation on the judgment to the out-of-pocket expenses of the Government in locating and returning Joseph from Germany to the United States. The motion was denied by the district court and Mohammed was given leave to submit a financial statement within ten days if he so desired. On January 25, 1978, the district court advised Mohammed's counsel by letter that the financial information had been received but that the court declined to comment upon it. The letter reiterated that the motion for reduction of the judgment had been denied and advised counsel that the Clerk's Office was being directed to remove the case from the court's docket.

Nothing further occurred until May 26, 1978, when counsel for Mohammed filed another pleading and appeared before the court in an attempt to stay execution on certain real estate owned by Mohammed in the State of Kentucky. In addition, the district court was asked to reconsider its denial of Mohammed's previous motion to reduce the judgment. Following a hearing on May 30, 1978, the district court entered an order *nunc pro tunc* December 2, 1977, which reviewed the docket entries and reflected the action of the court in denying Mohammed's motion for reduction of the judgment. A notice of appeal was filed by Mohammed on June 7, 1978.

Initially, the Government challenges this appeal as untimely, contending that in effect Mohammed is attempting to appeal from the action of the district court on December 2, 1977. Concededly, this case has had a somewhat tortuous procedural history, but without belaboring the point we are inclined to accept the appealability of the order of May 30, 1978, and address ourselves to the merits of Mohammed's claim.

■ The sole issue presented for our review is whether the district court abused its discretion in refusing to remit any part of the forfeited bond. In appraising the action of the district court, two of the factors to be considered are the expenses incurred by the Government and the appropriateness of the amount of the bond. *United States v. Kirkman*, 426 F.2d 747 (4 Cir. 1970). Other pertinent factors include the willfulness of the defendant's breach of the bond's conditions, the participation of the bondsman in rearresting the defendant, and the prejudice suffered by the Government. *See United States v. Nell*, 515 F.2d 1351, 1353 (D.C.Cir. 1975). Reviewing the record in the light of these criteria, we are persuaded that there was no abuse of discretion in this case.

At the original bail hearing on August 16, 1974, Mohammed testified that if Joseph were released on bail he would be employed in Mohammed's business and Mohammed assured the court that he would act as Joseph's supervisor. The district court indicated its concern about releasing Joseph since he was an alien, and warned Mohammed that he was taking a substantial

risk of losing his money if he undertook to guarantee his brother's appearance. The court went so far as to observe that Mohammed would be foolish to sign such a substantial bond under these circumstances.

 At the remission hearing on December 2, 1977, it developed that when Joseph had been released on bail he did not stay under the supervision of Mohammed but went to live with another brother. Mohammed testified that he was unaware of Joseph's whereabouts and did not know that he had left the jurisdiction of the court until he was so advised by the Government. It further developed that Joseph had fled to Germany and his whereabouts were ascertained by the Federal Bureau of Investigation when they determined that two automobiles were being shipped to him in Germany from the United States by Eddie Mizani, the brother with whom Joseph had been living after he was released on bail. From these facts it is clear that Joseph's breach of the conditions of his bond was willful and aggravated; that contrary to the assurances given to the court, Mohammed did little or nothing to supervise Joseph when he was released from custody; and, finally, Mohammed did nothing to assist the Government in locating Joseph in Germany or securing his return to the United States.

In urging us to order some remission of the forfeiture, counsel for Mohammed rely heavily upon our decisions in *United States v. Kirkman, supra*, and *Jeffers v. United States*, 588 F.2d 425 (4 Cir. 1978). However, the equities which influenced our decisions in those cases are notably absent in the case at hand. Since we discern no abuse of discretion, the forfeiture order and the judgment of the district court are affirmed.

*AFFIRMED.*