UNITED STATES of America,
Plaintiff-Appellee,

v.

Oscar CERVANTES,
Defendant-Appellant.

No. 81–2183
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 5, 1982.

Fred Galindo, Brownsville, Tex., for defendant-appellant.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, REAVLEY and RANDALL, Circuit Judges.

REAVLEY, Circuit Judge:

Oscar Cervantes was convicted of conspiracy to defraud the United States. He had posted his own $20,000 appearance bond prior to trial, depositing $2,000 into the court registry, *see* 18 U.S.C. § 3146(a)(3); bond was continued pending appeal. After his conviction was affirmed, he was ordered to surrender to the United States Marshal on January 29, 1981. He failed to appear

on that day, but surrendered himself a few days later. The government moved for judgment on Cervantes' forfeiture of the bond, *see* Fed.R.Crim.P. 46(e)(1), (3), and also indicted Cervantes for bail jumping, *see* 18 U.S.C. § 3150. The parties stipulated that the district court should consider the evidence presented at Cervantes' trial on the criminal charge in ruling on the government's forfeiture motion. A jury acquitted Cervantes on the criminal charge, but the court granted the government's forfeiture motion, ordering payment of the $2,000 deposit to the government, and entering judgment against Cervantes for $18,-000. From this order and judgment, Cervantes appeals. We affirm.

Rule 46(e)(1) requires the district court to declare a forfeiture "[i]f there is a breach of condition of a bond." Unless the court sets aside the forfeiture under Rule 46(e)(2), "the court shall on motion enter a judgment of default." Fed.R.Crim.P. 46(e)(3). However, the court may remit the judgment "in whole or in part" if it appears that justice does not require the enforcement of all or part of the forfeiture.[1]

■ The burden of establishing grounds for a set aside or remission is on the party challenging the forfeiture. *United States v. Gil*, 657 F.2d 712, 714–15, 716 (5th Cir. 1981) (motion to set aside forfeiture); *United States v. Foster*, 417 F.2d 1254, 1256–57 (7th Cir. 1969) (motion to set aside and to remit). We have often emphasized the breadth of the district court's discretion in deciding whether to set aside or remit any part of the forfeiture. *See, e.g., United States v. Gil*, 657 F.2d at 714; *United States v. Hesse*, 576 F.2d 1110, 1114 (5th Cir. 1978) (collecting cases); *Smith v. United States*, 357 F.2d 486, 490 (5th Cir. 1966). We will disturb the district court's judgment only for "a clear abuse" of that discretion. *Brown v. United States*, 410 F.2d 212, 218 (5th Cir. 1969). *See generally* 3 C. Wright, Federal Practice & Procedure § 777, at 294 (1969).

■ Cervantes argues that the district court should have remitted a large part of the forfeiture.[2] In *United States v. Parr*, 594 F.2d 440 (5th Cir. 1979) ("*Parr II*"), we held that the district court should consider four factors in determining the question and amount of remission: (1) the government's cost and inconvenience in regaining custody; (2) the delay caused by the defendant's default; (3) the willfulness of the defendant's breach of conditions; and (4) the public interest in ensuring the defendant's appearance. *Id.* at 444.

The district court, having heard the evidence at Cervantes' bail jumping trial, including Cervantes' own testimony, found that Cervantes had willfully failed to surrender pursuant to the court's order. It also found that Cervantes had fabricated two excuses for his failure to appear.

---

**1.** Rule 46(e) provides in pertinent part:
 (1) *Declaration.* If there is a breach of condition of a bond, the district court shall declare a forfeiture of the bail.
 (2) *Setting Aside.* The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture.
 (3) *Enforcement.* When a forfeiture has not been set aside, the court shall on motion enter a judgment of default and execution may issue thereon. . . .
 (4) *Remission.* After entry of such judgment, the court may remit it in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision.

**2.** Cervantes also makes a fleeting suggestion in his brief, unsupported by authority or argument, that the forfeiture should be set aside because the jury's verdict of acquittal on the criminal charge "is tantamount to finding that [he] did not wilfully and voluntarily failed [*sic*] to appear." Cervantes then concedes, however, that the forfeiture motion is a matter for the court. Cervantes made the same concession when he requested the court to consider the criminal trial record in making the forfeiture determination. The concession is well taken. A bond forfeiture motion is a civil matter, *see United States v. Barger*, 458 F.2d 396 (9th Cir. 1972), and a matter for the court under Rule 46(e). Cervantes does not argue that a set aside is compelled by the doctrines of res judicata or collateral estoppel. Nor could he. *See Helvering v. Mitchell*, 303 U.S. 391, 397–98, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938); 2 C. Wright, *supra*, § 468, at 262.

First, Cervantes claimed that two days before he was to surrender, he had been advised by his physician to seek hospitalization for a severe bacterial infection on his feet, legs, hands, and arms. The doctor testified, however, that he had no knowledge that Cervantes was scheduled to go to jail, and that Cervantes' condition could have been adequately treated in jail. The doctor said that the infection, which Cervantes had for three weeks before visiting him, was neither an emergency nor a debilitating condition. The doctor also testified that it was Cervantes who suggested that he be sent to the Veterans' Administration Hospital in San Antonio, some 280 miles from the district court in Brownsville. Finally, Cervantes did not seek leave from the district court before going to San Antonio, although he knew that such leave was necessary.

Second, Cervantes testified that a lawyer had told him not to worry about reporting because he would file the necessary papers and take care of everything. The court then ordered the lawyer subpoenaed. The lawyer testified that, while he had agreed to deliver a "To Whom It May Concern" letter from Cervantes' physician to the court, he had never advised Cervantes that he would not have to report nor agreed to file any motion for him. Indeed, the lawyer, who was representing Cervantes' conspiracy co-defendant in collateral proceedings, had made it clear to Cervantes on several occasions that he could not represent Cervantes. The "papers" in question were motion papers that the lawyer had prepared in his successful effort to continue Cervantes' co-defendant's bond pending a motion to set aside the co-defendant's conviction, which the lawyer had agreed to provide to Cervantes' attorney so that Cervantes could file similar motions. They had nothing to do with Cervantes' medical excuse.

Thus, the district court found that Cervantes had attempted to "finagle" his way out of jail until his attorney could file motions to set aside his conviction and for continuance of his bond. The court concluded that the circumstances justified its refusal to allow remission. The court relied "particularly on [Cervantes'] faking debilitating illness and his apparent disdain for the orders of this Court."

 Cervantes relies heavily on the first two *Parr* factors, that "[t]he 'forfeiture ought to bear some reasonable relation to the cost and inconvenience to the government of regaining custody ...' and the amount of delay caused by the defendant's default." *Parr II*, 594 F.2d at 444 (quoting *United States v. Kirkman*, 426 F.2d 747, 752 (4th Cir. 1970)). To be sure, Cervantes' actions did not cause the government great expense, inconvenience, or delay: the Marshal located Cervantes on the day he failed to appear, and Cervantes turned himself in voluntarily a few days later.[3] But the cost and delay factors are not controlling. We reject the argument that the amount of the forfeiture in cases of willful failure to appear should be limited to the government's expense. If that were the rule, then there would be little need for the initial determination of the bail necessary to ensure a defendant's appearance; the only question would be a *post hoc* determination of how much the defendant's non-appearance has cost. Many defendants might reasonably decide that the benefits of freedom outweigh the potential cost of reimbursing the government for its expense in recapturing them. The central purpose of bail—to ensure the defendant's appearance—could easily be defeated if the government's costs were the only thing at issue.

 In *Parr II* we derived the cost and inconvenience factor from the Fourth Circuit's decision in *United States v. Kirkman*, 426 F.2d at 750, 752.[4] As that court has

---

**3.** The Marshal's office records stated that Cervantes turned himself in on February 5, seven days after the court-ordered surrender date. Cervantes testified that he turned himself in on either February 3 or 4.

**4.** *Kirkman*, though very similar to this case, is distinguishable. The district court found that Kirkman had staged an automobile accident the night before his trial, and ordered that he

subsequently made clear, when the defendant willfully breaches the conditions of bond, and other factors weigh in favor of forfeiture, the district court may enforce the entire bond without determining the government's expense. *United States v. Mizani*, 605 F.2d 739 (4th Cir. 1979) (affirming district court's refusal to remit any part of $100,000 bond to surety after defendant, the surety's brother, was apprehended in Germany and returned by extradition). Indeed, the Fourth Circuit has reaffirmed the general rule that the government has no burden to produce any evidence of its expenses unless and until the district court, in its discretion, requires it to do so. *Jeffers v. United States*, 588 F.2d 425, 427 n.1 (4th Cir. 1978) (citing *United States v. Davis*, 202 F.2d 621, 625 (7th Cir.), *cert. denied*, 345 U.S. 998, 73 S.Ct. 1141, 97 L.Ed. 1404 (1953)); *cf. Carolina Casualty Ins. Co. v. United States*, 283 F.2d 248 (5th Cir. 1960) (denial of remission affirmed despite absence of evidence of cost to the United States in reapprehending the defendant).

Cervantes has cited no case in which this court has ordered remission simply because the amount of forfeiture exceeded the government's expense. The *Parr* case involved circumstances and equities not present here. Parr failed to appear at a late afternoon hearing on an order to show cause why his bond should not be revoked; early the next morning, he committed suicide. Manges, who had deposited $75,000 with the district court as Parr's bond, sought remission. The court remitted only $35,000. On Manges' first appeal, we remanded to the district court (1) because there was inadequate support for the district court's conclusion that Parr's failure to appear was willful, and because Parr's apparent insanity "might very well negate a finding of clear-cut willfulness"; (2) be-

cause the district court had relied on the expense to the government in limiting remission, but there was no evidence in the record concerning such expense; and (3) because it was unclear whether several other factors that the government had urged upon the district court—in particular, the government's inability to punish Parr for his crimes—had played any part in the district court's decision. *United States v. Parr*, 560 F.2d 1221, 1223–24 (5th Cir. 1977) ("*Parr I*").

■ On remand, the district court determined that Parr was not insane at the time of the show cause hearing, that the government's actual costs were $2,000, and that the government had been prejudiced by its inability to punish Parr. 451 F.Supp. 190, 192–93, 195 (S.D.Tex.1978). The court again concluded that Manges was entitled to a remission of only $35,000. On appeal, we concluded that the district court had abused its discretion. First, we held that the district court should not have relied on the government's inability to punish Parr because "[t]he purpose of a bail bond is not punitive." *Parr II*, 594 F.2d at 444. Then, we outlined the four factors the district court could properly consider. *Id.* In applying these factors to Parr's actions, it was apparent that we gave little weight to the district court's finding of willfulness; indeed, we did not even mention it. *See id.; see also Parr I*, 560 F.2d at 1223 ("The Supreme Court has said that a sane man would not commit suicide."). We did not see a great harm to the public interest in remitting a large part of the bond under the circumstances. *See Parr II*, 594 F.2d at 444. Surely not many defendants will attempt to avoid custody or secure remissions by committing suicide. Finally, we held that the forfeiture could be enforced up to

forfeit the full amount of his $25,000 appearance bond. On appeal, the Fourth Circuit held that Kirkman's forfeiture should have been limited to his $2,500 deposit. 426 F.2d at 750, 752. The appeals court found, however, that there was "persuasive medical testimony tending to support Kirkman's assertion that he was injured ... as a result of an automobile collision," *id.* at 749 (footnote omitted), whether the

accident was staged or not. We find no similarly persuasive evidence here; the record is clear that Cervantes did not need hospitalization ·in lieu of imprisonment. Moreover, the *Kirkman* court apparently considered cost and inconvenience to the government as the only relevant factor. *See id.* at 750, 752. In *Parr II*, we made it clear that there are other factors to be considered.

$10,000, even though the district court had found that the government's actual expense was only $2,000.

*Parr* was an exceptional case and a rare example of a finding by this court that a district court had abused its discretion.[5] In this case, by contrast, we see no reason to question the weight the district court gave to Cervantes' willful disregard of a court order and its conclusion that the public interest would best be served by full forfeiture. *Cf. United States v. Agueci*, 379 F.2d 277 (2d Cir.) (upholding full forfeiture of $20,000, despite murder of defendant soon after his default, because of the strong public interest in ensuring appearances), *cert. denied*, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967). The court had the benefit of hearing Cervantes' own explanations for his default. The court did not consider any impermissible factors. It considered all of the *Parr* factors and exercised its best judgment on how to strike the proper balance. Perhaps we would have exercised our own discretion differently, but "we cannot substitute our discretion for that of the district court." *Parr II*, 594 F.2d at 443.

Finding no clear abuse of discretion, we AFFIRM.

---

**5.** For a sampling of cases in which we have affirmed the district court's denial of remission, see *United States v. Skipper*, 633 F.2d 1177, 1180 (5th Cir. 1981) ($50,000 bond); *United States v. Hesse*, 576 F.2d 1110, 1114 (5th Cir. 1978) ($200,000 bond); *United States v. Gray*, 568 F.2d 1134 (5th Cir. 1978) (two $100,000 bonds); *United States v. Shelton*, 444 F.2d 522 (5th Cir. 1971) (remission denied despite defendant's recapture); *Smith v. United States*, 357 F.2d 486, 490 (5th Cir. 1966); *Carolina Casualty Ins. Co. v. United States*, 283 F.2d 248 (5th Cir. 1960); *cf. Brown v. United States*, 410 F.2d 212, 218 (5th Cir. 1969) (defendant breached bond's travel restrictions but never failed to appear; district court did not abuse its discretion in refusing to remit $5,000 of the $15,000 bond); *United Bonding Ins. Co. v. United States*, 329 F.2d 152 (5th Cir. 1964) (defendant missed calendar call; refusal to remit $5,000 of $10,000 bond affirmed). *See generally* 3 C. Wright, *supra*, § 777, at 294 ("ordinarily an appellate court will not interfere with [the district court's] decision").