941 F.2d 1207
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA by Roger D.
ROBERTS (Power of Attorney), Surety, Defendant-Appellant,
and
George Lee Kosko, Defendant.
 No. 89-6818.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1990.
Decided Aug. 19, 1991.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CR-87-48-R)
 Harry Franklin Bosen, Jr., Harry F. Bosen, Jr., P.C., Salem, Va., for appellant.
 Jean Martel Barrett, Assistant United States Attorney, Roanoke, Va., (Argued), for appellee; John P. Alderman, United States Attorney, Morgan E. Scott, Jr., Assistant United States Attorney, Roanoke, Va., on brief.
 W.D.Va.
 AFFIRMED.
 Before PHILLIPS, MURNAGHAN and SPROUSE, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 American Bankers Insurance Company, as principal, through Roger D. Roberts, surety, appeals from the judgment of the district court denying its motion for bond refund under Rule 46(e)(4) of the Federal Rules of Criminal Procedure. Finding no abuse of discretion in the court's order, we affirm.
 
 
 2
 * George Lee Kosko was arrested for drug-related crimes in violation of 21 U.S.C. § 841(a)(1) and was released on a $75,000 corporate surety bond provided by American Bankers acting through its agent, Roger D. Roberts. Kosko was later indicted and was released pending trial on the same bond. An agreement between Roberts and American Bankers required Roberts to indemnify American Bankers for any forfeiture losses on such surety bonds.
 
 
 3
 While awaiting trial, Kosko violated the terms of his release by failing to report to his probation officer. He later disappeared. The district court entered judgment against American Bankers and ordered payment to the United States in the amount of $75,000. Roberts paid $50,000 from his personal assets and borrowed another $25,000 from American Bankers' general agent. All but $742 in interest was paid.
 
 
 4
 The trial was postponed for several months while attempts were made to apprehend Kosko. Eventually, the court ordered that Kosko be tried in absentia. One day before the trial was to begin, Kosko turned himself in. He was eventually tried and his conviction was upheld on appeal. United States v. Kosko, 870 F.2d 162 (4th Cir.1989).
 
 
 5
 American Bankers filed a motion for refund of the bond, which after a hearing, was denied. It subsequently filed a motion to reconsider and rehear, which was also denied. On appeal, American Bankers contests the district court's refusal to remit any of the bond money, alleging that such refusal was arbitrary and capricious and an abuse of discretion. It contends that the court did not properly weigh the relevant factors in deciding not to refund the money. American Bankers argues that, applying the facts of this case to principles previously expressed by this Court, remission is warranted. It also asserts that remarks made by the trial judge at the hearing evince bias and partiality against bonding companies. We are not persuaded, and affirm.
 
 II
 
 6
 We first consider appellant's contention that comments made by the trial judge at the second hearing both demonstrate prejudicial bias and constitute compelling evidence that his refusal to remit any of the amount of the forfeiture was arbitrary and capricious. The court's comments were expressed in a colloquy between the court and counsel for American Bankers concerning the consideration that ought to be given to the public service aspect of a commercial bonding company's participation in the criminal justice system:
 
 
 7
 MR. BOSEN (Counsel for American Bankers): ... And while a bondsman takes a risk, he also performs a public service to the court in allowing a defendant who is presumed to be innocent to be out of jail to cooperate with his attorneys and prepare his case. It does perform a service to the court. It's unfortunate that in this case--
 
 
 8
 THE COURT: But I don't look on it as a service. Maybe I'm prejudiced against these bonding companies because it's these people that can't afford to pay these sums that get hooked with these bonding companies. The people with wealth, they don't need a bonding company. It's these people that really can't afford to pay and I've just seen it not with Mr. Roberts only, but time and time again.
 
 
 9
 And these people, they put their family through all this ordeal of sacrificing and raising ten percent (10%) of it everytime [sic] and then these bondsmen, they turn around and, most of them, and get all the surety on the thing to protect them. I have no sympathy for these bondsmen at all and if I could get them out of this court, they wouldn't be in this court at all. If I could. So, I mean you can talk about the service they perform, but I think they are an evil on society. That's my opinion.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 THE COURT: Well, I try to let as many of them out as I possibly can--
 
 
 13
 MR. BOSEN: Well, I understand, Judge.
 
 
 14
 THE COURT: --You know, before trial. But I just never like the proposition of, you know, fixing a bond at this and then the family--the person never can pay it. Somebody has to pay this premium. I just don't like it and you are not going to convince me otherwise, but go ahead. I mean--so he's not going to get it back on that reason that he's--he may get it back, but not because that he's doing a valuable service for the public.
 
 
 15
 Appellant argues that these comments demonstrate the district court was attempting to punish American Bankers. At the least, it argues, the judge's expressed attitude toward commercial bonding companies makes it improbable that he could have engaged in an impartial balancing of equities.
 
 
 16
 Claims of bias on the part of a trial judge are, of course, to be reviewed under an objective standard. "The question is not whether or not the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all of the circumstances." Rice v. McKenzie, 581 F.2d 1114, 1116 (4th Cir.1978) (interpreting 28 U.S.C. § 455(a)). See also, Liljeberg v. Health Serv. Acquisition Corp., 486 U.S. 847, 860 (1988).
 
 
 17
 We do not endorse or approve the tenor of the remarks of the court below. We are concerned that it injected unfavorable general characterizations during a hearing where the issue of a bonding company's rights were under court determination. On balance, however, we are persuaded that the statements made by the trial judge were in direct response to American Bankers' attempt to project its business as a public service, a portrayal it presented as a factor favoring remission. Nowhere did the court state that it was refusing to consider the possibility of remission for any of the other reasons presented. Again, the generalization in the court's predicate remarks were unfortunate, but in concluding, it capsuled its meaning "... he may get it back, but not because that he's doing a valuable service for the public." We find no fault with the disinclination to include a public service factor in the balancing process. Jeffers, 588 F.2d at 426; see also, United States v. Frias-Ramirez, 670 F.2d 849, 852 (9th Cir.), cert. denied, 459 U.S. 842 (1982) (citing United States v. Bass Bank, 573 F.2d 258, 260 (5th Cir.1978)) (court considered whether sureties were professionals or family and friends of the defendant in deciding whether to order remission). Considering all of the remarks in their proper context, we conclude that in balancing the recognized factors affecting remission, vel non, the judge's impartiality would not reasonably be questioned.
 
 III
 
 18
 Turning to the merits of the forfeiture issue, a district court is authorized to declare a forfeiture of bail if there is a breach of any condition of the bond. Fed.R.Crim.P. 46(e)(1). Moreover, a court has the discretion to set aside such forfeiture if a person released on bond is later returned to custody "or if it otherwise appears that justice does not require the forfeiture." Fed.R.Crim.P. 46(e)(2). In such cases, the court may remit all or part of the bond. Fed.R.Crim.P. 46(e)(4). A settled rule holds that it is within the "sound discretion" of the trial court to decide whether to order remission. At the same time, forfeiture should not be used to punish a defendant for his non-appearance, nor to enrich the government. United States v. Kirkman, 426 F.2d 747, 752 (4th Cir.1970). The standard by which we review a court's exercise of this discretion is "whether justice requires the enforcement of the forfeiture." Id. at 751-52.
 
 
 19
 Applying these general principles, we do not feel the district court abused its discretion. It first noted that the amount of the bond bore a reasonable relationship to the costs of pursuing Kosko and delaying trial. This was an appropriate consideration. See Accredited Surety & Casualty Co. v. United States, 723 F.2d 368, 369-70 (4th Cir.1983) (citing Jeffers, 588 F.2d at 427). The government did not submit a detailed accounting of the expenses it incurred as a result of Kosko's disappearance, but it estimated that the costs of trying to locate Kosko probably amounted to one-third of the forfeiture. The district court found that the amount was "substantial."
 
 
 20
 The court also properly gave weight to the willfulness of Kosko's breach of the conditions of the bond. See Jeffers, 588 F.2d at 426. The testimony established that during the time he was a fugitive, Kosko remained in contact with his privately-retained attorney, indicating a concerted attempt to evade the authorities. At the very least, this fact is probative of his awareness of the proceedings against him.
 
 
 21
 The court also properly considered the obvious fact that Kosko's fleeing was not merely a technical breach of the terms of the bond, the need to deter future violations, and the desirability to emphasize the serious nature of such bonds. See Accredited Surety & Casualty, 723 F.2d at 370.
 
 
 22
 The testimony reveals that Roberts made two trips to Florida in an attempt to locate Kosko, and that he fully cooperated with the authorities in their efforts. Importantly, however, the district court concluded that Robert's efforts, while laudable, did not outweigh the cost and inconvenience to the government. See United States v. Mizani, 605 F.2d 739 (4th Cir.1979).
 
 
 23
 In our view, the district court properly considered all the underlying equities and balanced them and the role that bail performs in administering the criminal justice system. Having done so, we conclude that it acted within its discretion in enforcing the full amount of the forfeiture.
 
 IV
 
 24
 For the foregoing reasons, we affirm the judgment of the district court denying appellant's motion for remission of the bond.
 
 
 25
 AFFIRMED.