670 F.2d 849
 UNITED STATES of America, Plaintiff-Appellee,
v.
Benito FRIAS-RAMIREZ, Defendant,
Conrado G. and Juana Frias, Antonio and Guadalupe Varagosa,
Eliseo and Consuelo Arreguin, Enrique and Estella
Villegas, Sureties for Defendant, Appellants.
 Nos. 80-5131, 80-5132.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 9, 1981.
Decided March 2, 1982.
 
 Deborah Thornhill, Sr. Citizens Legal Advocacy Program, Robert L. Sassone, Santa Ana, Cal., for appellants.
 Stephen V. Petix, San Diego, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before SKOPIL, FARRIS and BOOCHEVER, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 This consolidated appeal is brought by relatives of Benito Frias-Ramirez (defendant), who was under indictment. The relatives executed and posted a personal surety bond to obtain defendant's release on bail pending trial. Upon defendant's disappearance, the court ordered the bond forfeited, denied the sureties' motion to set aside or remit the forfeiture, and entered judgment on the forfeiture. We affirm.
 
 
 2
 * FACTS
 
 
 3
 Defendant was arrested and charged with conspiring to import cocaine and to possess, with intent to distribute, both cocaine and heroin in violation of 21 U.S.C. §§ 841(a)(1), 846, 952, 960, and 963. A United States magistrate set bail at $350,000 cash or corporate surety bond.
 
 
 4
 Defendant requested a bail reduction. The magistrate denied the request, citing defendant's alleged involvement with a principal in the conspiracy and his concern that defendant might flee to Mexico as reasons to deny the request. The magistrate, however, was impressed by the fact that defendant's parents were willing to tender their residence as security for their son's release. He stated that he would consider reducing bail if defendant found other relatives or friends who would serve as personal sureties and who could provide additional property as security for a bail bond.
 
 
 5
 Other members of defendant's family agreed to pledge their property in order to arrange his release. At a hearing on June 21, 1979, the magistrate agreed to accept a $250,000 personal surety bond to be signed by Mr. and Mrs. Conrado Frias, Mr. and Mrs. Enrique Villegas, Mr. and Mrs. Antonio Varagosa, and Mr. and Mrs. Eliseo Arreguin (sureties), all of whom were Spanish-speaking with a limited understanding of English. The sureties conveyed to the government trust deeds for three parcels of improved real property, representing a combined equity of approximately $185,000,[1] as security for the bond. The magistrate explained to defendant the conditions of his release and the severe consequences that would ensue to the sureties if he failed to appear when required. The magistrate, using an interpreter, also addressed the attending sureties, informing them that they would lose their property if defendant failed to reappear and advising them to notify the court if they thought that defendant might breach the conditions of his release. They responded, through the interpreter, "We'll be responsible."
 
 
 6
 The bail bond was filed on June 26, 1979, and defendant was released. Defendant subsequently failed to appear at a pretrial hearing on August 20, 1979, and thereby breached a condition of his release. Upon defendant's failure to appear, the government moved that the court order a default on the bail bond. The district court granted the government's motion, entered a judgment of default pursuant to Fed.R.Crim.P. 46(e)(3), and denied the sureties' motion to set aside or remit the forfeiture.
 
 II
 DISCUSSION
 
 7
 Fed.R.Crim.P. 46(e)(1) mandates bail forfeiture when a defendant breaches a condition of his release. Courts, however, may set aside or remit all or part of a forfeiture if "justice does not require the enforcement of the forfeiture." Fed.R.Crim.P. 46(e)(2) and (e)(4). The sureties attack both the judgment on the bond forfeiture and the district court's refusal to set aside or remit the forfeiture.
 
 A. The Forfeiture
 
 8
 The sureties present a twofold challenge to the forfeiture. First, they contend that defendant died in a boat fire on or about August 10, 1971, ten days before he was scheduled to reappear. They argue that his death should have exonerated the sureties from liability on the bond. Although their argument has some legal foundation, see, e.g., United States v. Costello, 47 F.2d 684 (6th Cir. 1931) and People v. Niccoli, 102 Cal.App.2d 814, 228 P.2d 827 (1951), it has no factual support. Defendant's body was never recovered, nor was it established that he was on the vessel when it burned. Moreover, the sureties conceded at oral argument that they lack sufficient evidence to prove defendant's death. Consequently, we cannot find that the trial court erred in finding the suggestion of defendant's death to be the "wildest speculation."
 
 
 9
 The sureties also argue that, because the magistrate allegedly failed to apprise them fully of the responsibilities and risks they would assume by signing the bail bond, the forfeiture was improper.[2] In other words, we are asked to find both that the magistrate owed a duty to communicate to the sureties the full extent of their liability exposure and that he breached that duty.
 
 
 10
 The record indicates that we need not reach the issue of whether judicial officers owe sureties a duty to assure their understanding of the risks assumed when signing a bond.[3] The magistrate, speaking through an interpreter, fully informed the sureties of the risks they assumed:
 
 
 11
 I want to make sure that you understand me, that, by pledging all of this property and signing on these properties, you are obligating yourself to pay the United States $250,000 if he (defendant) doesn't appear. In addition to that, you'll be losing your property in all possibility if he doesn't appear.
 
 
 12
 We commend the magistrate's decision to address the sureties directly, his sensitivity to the problems they might have had in understanding his remarks in English, and his use of an interpreter to relate his comments to the sureties. Without deciding whether there is a duty to address personal sureties who are present at bail proceedings, we encourage judicial officers to be alert to the problems such sureties may have in comprehending the risks they assume and to the difficulties some may have in understanding proceedings conducted in English.
 
 
 13
 B. The Refusal to Set Aside or Remit the Forfeiture
 
 
 14
 The decision whether to set aside or remit a forfeiture rests within the discretion of the district court. United States v. Stanley, 601 F.2d 380, 382 (9th Cir. 1979) (per curiam). In exercising that discretion, a court may consider a variety of factors, including: 1) the willfulness of the defendant's breach of the bond conditions; 2) the participation of the sureties in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government as a result of the defendant's breach; and 4) any explanation or mitigating factors. Id. Other considerations include whether the sureties were professionals or family and friends of the defendant, see United States v. Bass, 573 F.2d 258, 260 (5th Cir. 1978), and the appropriateness of the amount of the bond. See United States v. Mizani, 605 F.2d 739, 740 (4th Cir. 1979).
 
 
 15
 To reverse the trial court's refusal to set aside or remit, we must find an abuse of discretion. Stanley, 601 F.2d at 382. A district court abuses its discretion when it acts arbitrarily or capriciously. See United States v. Parr, 594 F.2d 440, 444 (5th Cir. 1979). The sureties bear the burden of establishing an abuse. See United States v. Nolan, 564 F.2d 376, 378 (10th Cir. 1977); United States v. Foster, 417 F.2d 1254, 1256-57 (7th Cir. 1969).
 
 
 16
 Although sympathetic to the consequences a forfeiture may have on the sureties in this case, we are influenced by several considerations to hold that the district court did not abuse its discretion in refusing to remit all or part of the forfeited bail.[4] The district court could have assumed that defendant's breach was voluntary in the absence of convincing evidence to the contrary. In addition, it knew that the government had incurred some costs and inconvenience as a result of defendant's disappearance.[5] Furthermore, the court could properly have found the amount of defendant's bail to have been appropriate in light of the nature of the offense with which defendant was charged. Finally, we think the sureties entered the bonding agreement aware of the consequences if defendant disappeared. These considerations provided the district court ample justification for its decision and preclude us from finding that its decision was arbitrary or capricious.[6]
 
 CONCLUSION
 
 17
 Because the magistrate informed the sureties of the risks they assumed by signing the bail bond and the trial court did not abuse its discretion in refusing to remit or set aside the forfeiture, we AFFIRM the order entering judgment on the forfeiture.[7]
 
 
 
 [1]
 The Frias couple tendered their residence, in which they had accumulated an equity interest of $75,000 during their sixteen years in the United States. The Villegas couple pledged their residence, which Mr. Frias had purchased and in which the sureties had a $58,000 equity interest. The Arreguin family had a $52,000 equity interest in the property they pledged as security for the bail bond
 
 
 [2]
 The sureties state this argument in several forms. They argue that: (1) the magistrate's alleged failure to explain the consequences of defendant's disappearance should estop the government from enforcing the forfeiture; (2) the conditions of the bond were never breached because the sureties fulfilled their obligations under the bond as they understood them; (3) before securing the bond, the sureties were entitled to appointed counsel because of their lack of education and their limited understanding of English; and (4) the court erred in ordering the forfeiture in the face of the magistrate's breach of a purported duty to communicate the conditions of the bond to the sureties
 
 
 [3]
 Whether judicial officers are obligated to inform sureties of the risks they assume when signing a bail bond is a novel issue. Federal legislation obligates judicial officers, when authorizing a defendant's release on bail, to inform the defendant "of the penalties applicable to violations of the conditions of release." 18 U.S.C. § 3146(c). Section 3146, however, is silent regarding the judiciary's duty to sureties. The sureties do not argue that defendant was never apprised of the risk to the sureties in the event of his disappearance. Moreover, the record shows that defendant was fully informed of the risks
 
 
 [4]
 In reaching our decision, we have considered cases in which other Circuits have found an abuse of discretion. See, e.g., Parr, supra; United States v. Kirkman, 426 F.2d 747 (4th Cir. 1970); and United States v. D'Argento, 339 F.2d 925 (7th Cir. 1964). These cases are readily distinguishable from the one before us because the defendants therein were found or reapprehended shortly after breaching the conditions of their release. Our survey of Ninth Circuit cases reveals that this Circuit has not yet confronted circumstances requiring an abuse of discretion finding. See, e.g., Stanley, supra; United States v. Casanova, 472 F.2d 1223 (9th Cir. 1973); United Benefit Fire Insurance Co. of Omaha, Neb. v. United States, 306 F.2d 325 (9th Cir. 1962); Stanton v. United States, 226 F.2d 822 (9th Cir. 1955)
 
 
 [5]
 The government need not show specifically what costs it has incurred. Stanley, 601 F.2d at 382
 
 
 [6]
 The sureties also suggest that the trial judge should have disqualified himself from considering their motion to set aside or remit the forfeiture because of information, beliefs, and biases acquired by him while presiding over the trial of one of Frias-Ramirez's co-defendants. Aside from the fact that the sureties seem to raise the bias issue now for the first time, ignoring the procedure for judicial recusal provided by 28 U.S.C. § 144, we reject their argument. Parties cannot attack a judge's impartiality on the basis of information and beliefs acquired while acting in his or her judicial capacity. See, e.g., United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); United States v. Partin, 552 F.2d 621, 636-39 (5th Cir.), cert. denied, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977); United States v. Tropiano, 418 F.2d 1069, 1077 (2d Cir. 1969), cert. denied, 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970); Lyons v. United States, 325 F.2d 370, 376 (9th Cir. 1963), cert. denied, 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738 (1964)
 
 
 [7]
 In so holding we do not preclude the sureties, in the event of foreclosure, from again requesting a remission of that amount of the forfeiture left unsatisfied by the foreclosure