**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Diego TORO; Adriana Toro,
Defendants–Appellees,**

and

**Ralph T. Powell, Maria L. Powell,
Sureties, Real Parties in
Interest.**

No. 91–50717.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1992.

Decided Dec. 7, 1992.

Dean G. Dunlavey, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellant.

Alan S. Ross, Benjamin S. Waxman, Robbins, Tunkey, Ross, Amsel & Raben, Miami, FL, for defendants-appellees.

Before: FEINBERG,* GOODWIN and SCHROEDER, Circuit Judges.

FEINBERG, Circuit Judge:

The government appeals from orders of the United States District Court for the Central District of California, Robert J. Kelleher, Jr., exonerating the sureties on two bail bonds. The case arose when the sureties moved for exoneration more than six years after two fugitive defendants failed to appear when required. The government responded by moving to have the bonds forfeited. The district court held for the sureties on the ground that the applicable six-year statute of limitations had run. For the reasons set forth below, we affirm the decision of the district court.

## I.

Defendants Adriana and Diego Toro were arrested in July 1984, and later indict-

ed for several offenses. On July 23, 1984, a magistrate set bail for Diego Toro in the amount of a $125,000 appearance bond with a five percent deposit, secured by the deeding of property. On August 16, 1984, sureties Ralph T. Powell and Maria L. Powell signed affidavits of sureties and mortgage deeds regarding three different pieces of property in Miami, Florida. The affidavits of the sureties acknowledged their obligations to pay the amount specified "in the event the bond is forfeited." Bond was posted on August 22, 1984. Adriana Toro's bail was also set at $125,000, five percent deposit, secured by the deeding of property. A corporate surety served as surety on Adriana Toro's bond.

On January 12, 1985, the Pretrial Services Agency informed the district court that Diego Toro had violated the conditions of his bail release. In response, the district court issued a bench warrant. In early May 1985, the court issued a bench warrant for Adriana Toro, as well. A few days later, the court ordered that the case be returned to the clerk's file of pending cases since the Toros were fugitives. The district court never ordered that the bail of either Diego or Adriana Toro be forfeited, nor did the court ever enter a judgment of default on either bond. The Toros have remained fugitives to the present day.

In August 1991, the sureties on Diego Toro's bond filed a motion for exoneration under Fed.R.Crim.P. 46, but the court clerk returned the motion for failure to use line-numbered paper. We reproduce in the margin the relevant portions of the Rule.[1]

---

* Honorable Wilfred Feinberg, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

1. Fed.R.Crim.P. 46 provides, in relevant part:
   (e) *Forfeiture*
   (1) *Declaration.* If there is a breach of condition of a bond, the district court shall declare a forfeiture of the bail.
   (2) *Setting Aside.* The court may direct that a forfeiture be set aside in whole or in part, upon such conditions as the court may impose, if a person released upon execution of an appearance bond with a surety is subsequently surrendered by the surety into custody or if it otherwise appears that justice does not require the forfeiture.

   (3) *Enforcement.* When a forfeiture has not been set aside, the court shall on motion enter a judgment of default and execution may issue thereon. By entering into a bond the obligors submit to the jurisdiction of the district court and irrevocably appoint the clerk of the court as their agent upon whom any papers affecting their liability may be served. Their liability may be enforced on motion without the necessity of an independent action. The motion and such notice of the motion as the court prescribes may be served on the clerk of the court, who shall forthwith mail copies to the obligors to their last known addresses.

On September 5, 1991, probably as a response to the sureties' abortive motion of August 7, the government asked the district court for a declaration of "bond forfeiture [with respect to Diego Toro's bond] and entry of bond forfeiture judgment" against the sureties in the amount of $125,-000. On the same date, the sureties on Diego Toro's bond filed a second motion for an order exonerating them and releasing bail. The government opposed the motion. By order dated September 11, 1991, the district court exonerated and released the sureties on Diego Toro's bail bond.

On September 19, 1991, the surety on Adriana Toro's bond moved for an order exonerating it and releasing bail on Adriana Toro, as well. Although the government had not moved to forfeit and obtain judgment on Adriana Toro's bond, it opposed the motion. In addition, the government moved for reconsideration of the district court's order exonerating Diego Toro's bond. By order dated September 25, 1991, the district court exonerated Adriana Toro's bond. Thereafter, the district court denied the government's motion for reconsideration of its orders of September 11 and 25. This appeal followed.

## II.

■ The district court's order exonerating the sureties was based on its interpretation of the law and is thus subject to *de novo* review. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ In its September 11 and September 25 orders, the district court ruled that the bail bond agreements were contracts between the government and the defendants and the sureties, and that the government's right to forfeiture and judgment was governed by 28 U.S.C. § 2415. This statute of general application provides that "every ac-

tion for money damages brought by the United States ... which is founded upon any contract ... shall be barred unless the complaint is filed within six years after the right of action accrues." Because more than six years had passed since the Toros breached their bond agreements, and the government had failed timely to enforce its remedy against the sureties, the court ruled that the sureties were entitled to exoneration and release.

■ The government offers a number of reasons why 28 U.S.C. § 2415 does not apply here. However, we believe that the district court correctly applied 28 U.S.C. § 2415 to bar the government's belated attempt to obtain judgment on the bail bonds. First, the government's action in seeking forfeiture of Diego Toro's bond and "entry of bond forfeiture judgment" was "founded upon ... contract." This court has held that "[a] bail bond is a contract between the government and the defendant and his surety." *United States v. Lujan*, 589 F.2d 436, 438 (9th Cir.1978), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 287 (1979). Accordingly, courts apply general principles of contract construction when interpreting bail bonds. *Id. See also United States v. Vaccaro*, 719 F.Supp. 1510, 1517 (D.Nev.1989), *appeal dismissed*, 931 F.2d 605 (9th Cir.1991).

Next, there is no question that the government's motion was an "action." Rule 46(e)(3), *see supra* note 1, provides that the sureties' "liability may be enforced on motion without the necessity of an independent action." Clearly, the government's motion should be considered as an "action" for this purpose.

In addition, the government's motion was "an action for money damages brought by the United States." The sureties offer two theories in support of this proposition. Under the first, a government motion for bond

(4) *Remission.* After entry of such judgment, the court may remit it in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision.

(f) *Exoneration.* When the condition of the bond has been satisfied or the forfeiture thereof

has been set aside or remitted, the court shall exonerate the obligors and release any bail. A surety may be exonerated by a deposit of cash in the amount of the bond or by a timely surrender of the defendant into custody.

forfeiture and judgment is an action for the money damages it may sustain in apprehending a defendant who has fled or otherwise breached the conditions of his bond. Under the second theory, which we prefer, a government motion for forfeiture and judgment is an action for liquidated damages. *See United States v. Abernathy*, 757 F.2d 1012, 1015–16 (9th Cir.), *cert. denied*, 474 U.S. 854, 106 S.Ct. 156, 88 L.Ed.2d 129 (1985) (no remission even where government fails to specify expense incurred as a result of bailee's breach); *United States v. Stanley*, 601 F.2d 380, 382 (9th Cir.1979) (bond forfeiture proper even where government fails to show expense incurred.) As already noted, the government's motion with respect to Diego Toro's bond sought a judgment against the sureties in the amount of $125,000, the total amount of the bond.

■■■ Finally, Diego Toro violated the terms of his bail bond in late December 1984, or early January 1985. The government had actual knowledge of the breach by mid-January 1985, when the Pretrial Services Agency filed its notice of the breach, whereupon the district court issued a bench warrant for Diego Toro and continued the trial. Nevertheless, the government did not file its motion for forfeiture and judgment until September 1991. The statute of limitations for actions based on contract begins to run at the time the contract is breached. *See United States v. Atkinson*, 575 F.Supp. 791, 794 (C.I.T. 1983). Since the Toros apparently breached their bail bond agreements in January 1985, or, at the latest (with respect to Adriana Toro) in May 1985, and the government filed its motion in September of 1991, the government's action came more than six years after the right of action accrued.

The government appears to blame the district court for the government's own failure to seek relief, pointing to Fed. R.Crim.P. 46(e)(1) which provides: "If there is a breach of condition of a bond, the district court shall declare a forfeiture of

the bail." *See supra* note 1. The government argues that this language imposed an obligation on the district court to forfeit the bonds *sua sponte* when it learned of the breaches in 1985. However, the Rule is silent as to when the trial court must declare a forfeiture. The Tenth Circuit has recognized that "[n]othing in [Fed. R.Crim.P. 46(e)(1)] ... requires the trial court to declare a forfeiture immediately upon the defendant's failure to appear," *United States v. Navarrete–Martinez*, 776 F.2d 887, 888 (10th Cir.1985), and the Eighth Circuit has pointed out that "Fed. R.Crim.P. 46(e)(1), which mandates entry of a forfeiture order upon breach of a condition, does not specify that the order must be entered at the time the bench warrant is issued." *Appearance Bond Surety v. United States*, 622 F.2d 334, 336 (8th Cir. 1980).

It is certainly clear that rather than waiting for the district court to act *sua sponte*, the government has moved for forfeiture in a great many cases in this circuit.[2] In one case, the government delayed eight months in moving to revoke a defendant's bail. Although this court was simply considering whether the government was barred by laches in its delay, our analysis in focusing on the reasons for the government's delay in that case makes clear that the district court was not required to forfeit the bond immediately or *sua sponte*. *See United States v. Stanley*, 601 F.2d 380, 381 (9th Cir.1979). *See also Navarrete–Martinez*, 776 F.2d at 888 (holding that district court need not declare forfeiture of bond immediately upon defendant's failure to appear).

■■ Strictly speaking, even if the government were correct that the district court should have declared a forfeiture *sua sponte* in early 1985, the government still did not bring its action within the six-year limitation period. The government's argument, then, must be that the statute of limitations on a claim against the sureties under Rule 46 could not start to run until

---

**2.** *See, e.g., United States v. Abernathy*, 757 F.2d at 1014; *United States v. Stanley*, 601 F.2d at 381; *United States v. Lujan*, 589 F.2d at 437; *United States v. Plechner*, 577 F.2d 596, 597 (9th Cir.1978); *United States v. Gonware*, 415 F.2d 82, 83 (9th Cir.1969); *United States v. Vaccaro*, 719 F.Supp. at 1512; *United States v. Banks*, 621 F.Supp. 602, 604 (S.D.Cal.1985).

the district court met its obligation to declare the bond forfeited, which it never did. In other words, the argument is that the court, not the prosecutor, has the responsibility of keeping a bail bond breach from falling through the cracks. The argument is not persuasive. It makes sense for the prosecutor, in the first instance, to keep track of breaches of bail bonds. The purpose of a bail bond is to insure that "the accused will reappear at a given time by requiring another to assume personal responsibility for him, on penalty of forfeiture of property." *Cohen v. United States,* 82 S.Ct. 526, 528, 7 L.Ed.2d 518 (1962), *See also United States v. Nebbia,* 357 F.2d 303, 304 (2d Cir.1966) ("It 'is not the sum of bail bond that society asks for, but rather the presence of the defendant....' "). Surely the prosecutor, who initiates criminal charges against a defendant, has a strong incentive to make sure that the defendant appears at trial. That is why prosecutors frequently oppose the granting of bail or argue that it should be set at a higher figure than the amount ultimately fixed by a court.

Also, the failure of prosecutors to seek default judgments against sureties on bail bonds cannot help but weaken the deterrent effect such bonds have upon defendants considering flight. In addition, the district court is simply too busy with its calendar to bear the additional burden of having to declare forfeiture *sua sponte,* in the absence of a suggestion by the prosecutor. Finally, the forfeited bond money, like any fine or penalty, goes into the United States Treasury. 18 U.S.C. § 3146(d). It is customary for the prosecutor and not the court to bear the initial responsibility for seeing to it that fines and penalties get paid. 18 U.S.C. § 3612.

■ Therefore, we reject the argument that the statute of limitations could not start to run here until the district court declared the bonds forfeited. The government also offers a variation of this argument, relying upon the statement this court made in *United States v. Plechner,* 577 F.2d 596, 598 (9th Cir.1978), that "[u]pon forfeiture, the surety becomes the government's debtor." The government argues that since there was no judicial declaration of forfeiture here, the sureties did not become "the government's debtor" and the government "was never in a position to file a complaint against the sureties to collect the bail amounts." Accordingly, the government argues, the statute of limitations never began to run. In *Plechner,* however, the issue was whether the surety's time to appeal from an adverse district court ruling was governed by the rules for civil cases or those for criminal cases. The statement relied upon by the government was part of a paragraph emphasizing that "[a] bail bond is a contract between the government and the defendant and his surety," so that the government's motion for judgment on a bail bond was " 'civil, not criminal, in nature.' " *Id.* (quoting *United States v. Barger,* 458 F.2d 396 (9th Cir.1972)). *Plechner* simply did not address the issue of whether the statute of limitations on a claim against the surety there started to run when defendant Plechner breached his bail bond conditions. Moreover, the court in *Plechner* cited *Western Surety Co. v. United States,* 51 F.2d 470 (9th Cir.1931), as authority for the statement relied on by the government here. But the court in *Western Surety* stated that " 'the sureties become debtors' " on " 'the failure of the principal to appear.' " *Id,* at 471 (quoting *United States v. Davenport,* 266 F. 425, 427 (W.D.Tex.1920)). We take this to support the proposition, which we accept, that the statute of limitations on a claim against a surety starts to run when a defendant breaches a bail bond condition.

The government also argues that until the district court decides that a bond is forfeited "in whole or in part," *see* Rule 46(e)(2), the government would not know how much money damages to claim. The obvious response is that the government can (and usually does) claim, as it did here, that the entire amount ($125,000 per bond) should be forfeited.

Finally, the government argues that the six-year statute of limitations is simply inapplicable in this context. It claims that where, as here, "the timing problem arose in the context of a judicial proceeding," the

Federal Rules of Criminal Procedure rather than 28 U.S.C. § 2415 govern. We agree that Rule 46 is not to be ignored. Indeed, we rely upon it for the proposition that the government's motion was, in effect, "an independent action." If, however, that right of action accrued when the bond agreement was breached, then the statute of limitations governing the time within which the government may sue to collect began to run as of that date. The fact that the timing problem arose in the context of a judicial proceeding is beside the point.

On this view of the case, we need not deal with the sureties' argument that the government's laches bars any recovery.

The judgment of the district court is AFFIRMED.