UNITED STATES of America,
Plaintiff–Appellee,

v.

AMWEST SURETY INSURANCE
COMPANY; Tito's Bail Bonds,
Defendants–Appellants.

No. 93–16902.

United States Court of Appeals,
Ninth Circuit.

Submitted March 15, 1995.*

Decided May 9, 1995.

E. Alan Nunez, Nunez & Bernstein, Fresno, CA, for defendants-appellants.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Federal Rule of Appellate Procedure 34(a).

John F. Gisla, Asst. U.S. Atty., Sacramento, CA, and Marsha R. Stroup, Asst. U.S. Atty., Fresno, CA, for plaintiff-appellee.

Before: NORRIS, WIGGINS, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Amwest Surety Insurance Company and Tito's Bail Bonds appeal the district court's order denying remission of a bail bond forfeiture. The bond was issued to secure the appearance of Johnny Nash at all criminal hearings before the court. Amwest and Tito's argue that the district court erred when it determined that they had waived their right to request remission and that the facts of this case did not warrant remission. We affirm.

## BACKGROUND

In August of 1992, Amwest executed a $100,000 surety bond to secure the release of Johnny Nash, who was charged with conspiracy to manufacture methamphetamine, possession of a listed chemical with intent to manufacture a controlled substance, and aiding and abetting. Nash's ex-wife, Mrs. Oleta Nash, had pledged her real property to the sureties as security for the bail bond. On October 19, 1992, Nash fled the court's jurisdiction and the next day an arrest warrant was issued. On November 23, 1992, the bond was ordered forfeited. Nash was reapprehended on December 15, 1992.

In January of 1993, the government filed a motion for final judgment of forfeiture. Mrs. Nash filed an opposition to the government's motion and also filed a motion to set aside the forfeiture. The district court conducted an evidentiary hearing but Amwest and Tito's, Amwest's agent, did not appear at the hearing. The district court denied Mrs. Nash's motion on the ground that she did not have standing.[1] Taking note that Amwest did not appear at the hearing on the government's motion for order of forfeiture, despite

the service of notice upon it, the court forfeited the entire surety bond.

Amwest did not pay the $100,000.00 judgment and the government filed a motion to show cause why it and Tito's should not be enjoined from writing appearance bonds in the Eastern District of California. Amwest and Tito's then decided that they would appear. They filed an opposition to the motion and also filed their own motion which requested remission of the bond. See Fed. R.Crim.P. 46(e)(4). In September of 1993, the district court denied the remission. It held that Amwest and Tito's had waived their right to request remission when they failed to attend the hearing on the government's motion for forfeiture and that remission was not proper in this case. This appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 28 U.S.C. § 1345. We have jurisdiction under 28 U.S.C. § 1291.

We review a district court's decision to set aside or remit the forfeiture of an appearance bond for abuse of discretion. See United States v. Abernathy, 757 F.2d 1012, 1015 (9th Cir.1985) (per curiam), cert. denied, 474 U.S. 854, 106 S.Ct. 156, 88 L.Ed.2d 129 (1985).

## DISCUSSION

The district court denied the motion for remission for two separate reasons. First, the court determined that the sureties had waived their right to request remission. Second, it held that remission was not appropriate under the facts of this case. We disagree with the former reason but agree with the latter.

### A. Waiver of right to request remission

"A waiver is an intentional relinquishment or abandonment of a known right or privilege." Groves v. Prickett, 420 F.2d 1119, 1125 (9th Cir.1970). It can preclude the assertion of legal rights. Id. An implied

---

1. This appeal does not involve that decision.

.waiver of rights will be found where there is "clear, decisive and unequivocal" conduct which indicates a purpose to waive the legal rights involved. *Id.* at 1125–26.

The Federal Rules of Criminal Procedure permit courts to set aside forfeitures if the "person released upon execution of an appearance bond with a surety is subsequently surrendered by the surety into custody or if it otherwise appears that justice does not require the forfeiture." Fed.R.Crim.P. 46(e)(2). They also provide that after the entry of judgment, the court may remit the forfeiture "in whole or in part under the conditions applying to the setting aside of forfeiture." Fed.R.Crim.P. 46(e)(4).

▮ The district court misapplied the waiver doctrine in this context. As we have already said, there can be a waiver of a right or privilege under proper circumstances. *See Groves,* 420 F.2d at 1125–26. Here, however, a finding of waiver based upon a failure to appear at the Rule 46(e)(2) hearing is at odds with Rule 46 itself. The rule clearly permits sureties to seek remission after the entry of judgment, and the court's ruling that this ability was eradicated by Amwest's and Tito's' failure to participate in Mrs. Nash's motion to set aside forfeiture has no support in the rule. The sureties requested one permitted form of relief as opposed to the avenue pursued by Mrs. Nash. The rule does not prohibit their request. Rather, the rule contemplates it.

Moreover, "waiver" here would be particularly inappropriate because the merits of Mrs. Nash's motion were not even addressed. Instead, her motion was denied for lack of standing. Amwest and Tito's suggest that they were, in some sense, represented by Mrs. Nash in the first proceeding. Were that true and if there had been a hearing on the merits of Mrs. Nash's motion, there might be a powerful argument that their new request for remission goes against principles of judicial economy. In addition, if they *had* appeared at the motion to set aside the forfeiture, litigated its merits, and thereafter sought another hearing regarding remission, that too might be barred by considerations of judicial economy. *See Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery,* 44 F.3d

800, 802–03 (9th Cir.1995); *McClain v. Apodaca,* 793 F.2d 1031, 1032–33 (9th Cir.1986). None of those conditions occurred here.

On these facts, there is no basis for concluding that the sureties were precluded from seeking relief. Rule 46(e) contemplates two separate procedures—one to set aside a forfeiture and another to ask for its remission. We would be untrue to the clear language of the rule were we to declare that one of those procedures was waived.

### B. The Merits of the Remission Request

▮ A district court may consider six factors when deciding whether to remit the forfeiture of a bond. Those factors are: 1) the defendant's willfulness in breaching a release condition; 2) the sureties' participation in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is a professional or a member of the family or a friend; and 6) the appropriateness of the amount of the bond. *See United States v. Frias–Ramirez,* 670 F.2d 849, 852 (9th Cir.) (setting forth the six factors), *cert. denied,* 459 U.S. 842, 103 S.Ct. 94, 74 L.Ed.2d 86 (1982); *see also Abernathy,* 757 F.2d at 1015 (first four factors). Not all of the factors need to be resolved in the government's favor. *See Abernathy,* 757 F.2d at 1015. The government's failure to show "prejudice, cost or inconvenience" will not mandate remission. *See United States v. Stanley,* 601 F.2d 380, 382 (9th Cir.1979).

In the instant case the district court found that the first four factors weighed against remission. First, it took note of a letter that Nash left behind for his Pre–Trial Services Officer when he escaped. In the letter, Nash wrote: "Sorry about having to leave this way. There is just no way I can do twenty or more years for what I've done." That his breach was willful is apodictic.

Second, the district court determined that Amwest and Tito's did not participate in apprehending Nash after his flight. They do not contend the contrary. They do argue that Mrs. Nash attempted to help authorities reapprehend Nash. For example, Mrs. Nash

gave Peter Hillman, the United States marshal on this case, the name of one of Nash's friends, Glenn Atkinson. She also gave Hillman information about Atkinson's relatives, friends and associates, and although there were also other sources of the same information, the information was helpful in eventually finding Nash. While that does indicate that Mrs. Nash did cooperate with the marshal, it does not demonstrate that Amwest and Tito's made affirmative efforts to recapture Nash, or to otherwise participate in his apprehension.

Third, the district court determined that there was sufficient evidence that the government incurred costs of over $37,000 in this matter. It also pointed out that the government was inconvenienced by the additional litigation "necessitated by" Nash's disappearance. The findings of cost and inconvenience were supported by the government's submission of a list of costs and the testimony of marshal Hillman, who recounted his efforts in trying to locate Nash.

Fourth, the district court found no mitigating factors. The issue was whether Amwest and Tito's should be relieved of their obligations. Nothing supported the claim that they should be. They attempted to point to the fact that Mrs. Nash had given them security for their bond and that she should be protected. But she was not before the court, and we cannot adjudicate the nature and enforceability of the rights and duties existing between her and the sureties.

Similarly, while the district court did not specifically analyze the fifth factor—relationship of the surety to the defendant—it is obvious that Amwest and Tito's are professionals.

█ The last factor to consider is the appropriateness of the amount of the bond. We do not require that the bond approximate costs. Instead, we regard forfeiture as a form of liquidated damages. *See United States v. Toro*, 981 F.2d 1045, 1048 (9th Cir.1992) (action for forfeiture and judgment is an action for liquidated damages); *Abernathy*, 757 F.2d at 1015–16 (no remission even where government fails to specify expense incurred as a result of a bailee's breach); *Stanley*, 601 F.2d at 382 (bond forfeiture

proper even where government fails to show expense incurred). Indeed, appropriateness looks more to the proper fixing of the amount of the bond itself. As we said in *Frias–Ramirez*, 670 F.2d at 853, "the court could properly have found the amount of defendant's bail to have been appropriate in light of the offense with which defendant was charged."

Amwest and Tito's stress that other courts have often granted remission when the defendant has been reapprehended, as Nash has been. *See, e.g., Accredited Sur. & Casualty Co. v. United States*, 723 F.2d 368, 369–70 (4th Cir.1983) (remission of $50,000 of a $75,000 bond, where a recaptured defendant had failed to appear at a preliminary hearing); *United States v. Bass*, 573 F.2d 258, 260 (5th Cir.1978) (bail bonds are not punitive; ultimate appearance of defendant is ground for remission even if defendant failed to appear for prior hearings).

However, while those courts have placed a good deal of weight on the relationship between the amount of the bond and the *ultimate* cost to the government, we have not done so. Rather, we have recognized that where there has been cost and inconvenience to the government (as there was here) the amount need not be specified. That is consistent with this court's view that bail bonds are contracts for liquidated damages. *See Toro*, 981 F.2d at 1048. The hallmark of a liquidated damage provision is reasonableness at the time the agreement is made rather than a calculation of actual provable losses when the breach occurs. *See, e.g., Cal.Civ.Code § 1671 (validity of liquidated damage clauses). The actual damages may be more or less than the liquidated amount. As we said in *Abernathy:* "[T]he government's protracted search for, reapprehension of, and additional proceedings against the appellants provide a basis for finding that the government suffered considerable cost and inconvenience even if the dollar amounts are unspecified." 757 F.2d at 1015–16. And in *Stanley*, 601 F.2d at 382, we declared that a denial of remission was within the district court's discretion where there was an intentional breach of bond conditions and a lack of mitigating factors, even though "there was

no showing of specific prejudice, cost, or inconvenience to the Government resulting from [the] breach."

After a review of all of the factors, we cannot say that the district court abused its discretion. Nash's escape was willful, the sureties did not actively participate in his recapture, there was inconvenience to the government, the sureties had a professional relationship to Nash, and there were no apparent mitigating factors. Although there was no exact match between cost to the government and the bond, a match is not necessary and its lack does not require that the bond be remitted in whole or in part.

## CONCLUSION

Amwest and Tito's are professional sureties, who earn income by issuing bail bonds but who do not wish to pay off when things go wrong. To their surprise and regret things went wrong when Mr. Nash decided that he did not want to "do twenty or more years...." We see no reason to hold that the district court was required to relieve them from their obligation to do what they promised to do—pay the agreed upon amount if Mr. Nash did not appear. We do not hold that they waived the right to seek remission; we hold that they simply are not entitled to it. In fine, their promise was no *nudum pactum;* they must now perform it.

AFFIRMED.