**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sureties Tracy NGUYEN; Khanh
Bui, Claimants–Appellants,**

v.

**Vinh Huu NGUYEN, Defendant.**

**No. 00–55795.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 2001

Filed Feb. 8, 2002.

Roger S. Hanson, Santa Ana, California, for the claimants-appellants.

Jean Rosenbluth, Assistant United States Attorney, United States Attorney's Office, Los Angeles, California, for the plaintiff-appellee.

Before: FERNANDEZ, KLEINFELD, and McKEOWN, Circuit Judges.

Opinion by Judge McKEOWN; Dissent by Judge KLEINFELD.

McKEOWN, Circuit Judge.

This case arises out of Vinh Huu Nguyen's conviction for fraud and his subsequent failure to surrender to serve his prison term. Pending his appeal, the court allowed Nguyen to remain free on a bond secured by property belonging to Tracy Nguyen, his sister-in-law, and

Khanh Bui, his brother-in-law (collectively "the Sureties"). When Nguyen failed to self-surrender in accord with the court's order, the district court granted the government's application for judgment of default on bond forfeiture. The Sureties claim that the district court abused its discretion in ordering that the entire $100,000 bond be forfeited. We disagree and we affirm.

## BACKGROUND

Nguyen was convicted of eleven counts of loan fraud and sentenced to a thirty-month prison term. The district court increased his bond from $50,000 to $100,000 and released him pending appeal. The Sureties secured the bond with their equity in residential properties. Bui offered as collateral a house that he owned but did not live in; Tracy Nguyen offered her residence, although she also owned commercial property in which her office was located.

Nguyen was successful in the appeal of his sentence. In January 1999, we affirmed the conviction and remanded for resentencing. *United States v. Nguyen*, 166 F.3d 1219 (9th Cir.1999)(unpublished). Following remand, the district court reimposed the thirty-month sentence, denying Nguyen's request to remain free on bond pending an anticipated habeas petition. Over the prosecution's objection the district court did, however, grant Nguyen's request to remain free for a few extra weeks to care for his sick wife. The court imposed a self-surrender deadline of noon, March 22, 1999.

Just three days before the surrender date, Nguyen filed another request to stay surrender pending resolution of his habeas petition. The court denied the application and ordered that "Defendant must surrender as previously ordered by this Court on Monday, March 22, 1999, at 12:00 noon." March 22 came and went, but Nguyen did

not surrender himself. Instead, he visited a hospital emergency room, complaining of breathing difficulties and nose bleeding related to a nasal condition from which he had been suffering for several months. Hospital personnel later testified that he was released at five minutes after noon, that his condition required no treatment, and that they had declined to write a note excusing him from "court." He then proceeded to his own physician, Dr. Tran, who found no signs of recent bleeding. On the pretext that he needed a note for work, Nguyen obtained a note from the office manager. Unaware that Nguyen was due in prison, Dr. Tran agreed to schedule surgery on March 26.

Tracy Nguyen, now acting as Nguyen's attorney as well as surety, delivered to the U.S. Marshal's Office a declaration stating that Nguyen was unable to surrender himself because of these medical problems. Upon receipt of the declaration, the prosecutor called Dr. Tran, who advised that Nguyen was scheduled for minor, outpatient surgery on March 26, and that he could report to prison by March 29 at noon, assuming adequate follow-up medical care was available. At the prosecutor's request, the court issued a bench warrant but agreed to delay execution until March 29 at noon.

Although he had been informed of the new surrender date, once again the deadline passed and Nguyen did not surrender himself. Instead of having the surgery as scheduled, he consulted a new doctor on March 25, again failing to inform the doctor that he was overdue in prison. Nguyen underwent out-patient surgery on March 30. According to his doctors, had they known he was scheduled to go to jail, they would not have recommended or scheduled surgery.

As deadlines came and went, Tracy Nguyen continued to file motions to stay

the surrender, both on medical grounds and pending resolution of a habeas petition. The district court found, however, that the motions raised nothing new, based as they were on the same grounds that had been previously rejected.

During the weeks prior to his arrest, Nguyen's location was also a mystery. He left after-hours messages with his pretrial services officer, sidestepping personal visits and stating that he was under a doctor's care. Nguyen told the court that he would be living at Bui's home during his supervised release, but he apparently was not, at least during the time at issue here. He had, in fact, purchased a house under his father-in-law's name. Although he later denied that he was living at this second address, he gave the telephone number at the second address to the pretrial services officer, received messages at the second address, and filled out a change-of-address form, listing the second address as his new one.

After he missed the final deadline, the court issued a bench warrant. The U.S. Marshals set up surveillance and eventually entered Bui's home pursuant to an arrest warrant, but found no sign of Nguyen. On April 20, 2000, U.S. Marshals arrested Nguyen at a work address.

Nguyen was tried and convicted of failing to surrender himself, in violation of 18 U.S.C. § 3146(a), for which he was sentenced to serve an additional eighteen months. We affirmed his conviction in a separate disposition. *United States v. Nguyen*, No. 00–50446, 2001 WL 1153253 (2001) (unpublished). Having stayed the forfeiture proceedings pending the results of Nguyen's bail jumping trial, the district court entered judgment against the Sureties for $100,000, the entire amount of the bond, and declined to remit the forfeiture.

## DISCUSSION

The law on bail forfeiture is neither complex nor voluminous. The Federal Rules of Criminal Procedure provide: "If there is a breach of a condition of a bond, the district court shall declare a forfeiture of the bail." Fed.R.Crim.P. 46(e)(1). The forfeiture is thus mandatory. *United States v. Abernathy*, 757 F.2d 1012, 1015 (9th Cir.1985). However, under Rule 46(e), the district court

> (2) ... may direct that a forfeiture be set aside in whole or in part, upon such conditions as the court may impose, if a person released upon execution of an appearance bond with a surety is subsequently surrendered by the surety into custody or if it otherwise appears that justice does not require the forfeiture.... [And](4) ... may remit it in whole or in part under the [same] conditions....

Fed.R.Crim.P. 46(e)(2) & (4).

We review the district court's denial of a motion for relief from bond forfeiture for abuse of discretion. *United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 602 (9th Cir.1995). Given the wide discretion afforded the district court in this arena, we cannot say that the district court acted arbitrarily or capriciously in its well-reasoned decision not to set aside or remit the forfeiture in this case. *See United States v. Frias–Ramirez*, 670 F.2d 849, 852 (9th Cir.1982). We are not unmindful or "[un]sympathetic to the consequences a forfeiture may have on the sureties in this case," *id.*, but the standard of review guides our decision here.

Following the law of this circuit, the district court considered six factors in deciding whether to set aside or remit the forfeiture of the bond:

> 1) the defendant's willfulness in breaching a release condition; 2) the sureties'

participation in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is a professional or a member of the family or a friend, and 6) the appropriateness of the amount of the bond. *Amwest*, 54 F.3d at 603 (citations omitted). Although we have held that "[t]hese are merely non-exclusive factors for consideration, and '[n]ot all of the factors need to be resolved in the government's favor,'" *United States v. Sar–Avi*, 255 F.3d 1163, 1167 (9th Cir.2001), here the scales tip heavily in the government's favor.

The record amply supports a finding as to the first factor, that Nguyen acted willfully, understanding that he was legally required to give himself up, and actively dodging law enforcement. The district court found that Nguyen's medical problems did not prevent his self-surrender on the original date and that his "eleventh hour applications to extend his bond release" did not relieve him of the duty to surrender himself. Indeed, not only did the district court reject his medical excuse, the jury in his criminal prosecution did so as well. No medical emergency prevented his surrender.

The district court placed particular emphasis on the fact that Nguyen was arrested at work, when he and his attorney/surety Tracy Nguyen, had consistently claimed that he was unable to surrender because he was home recuperating from surgery. Nguyen essentially thumbed his nose at the court-imposed deadlines. He parlayed what started out as a short extension for humanitarian reasons—so Nguyen could care for his wife—into a series of delays and purposeful evasion. As in past cases in which we have found full forfeiture permissible, *see, e.g., Abernathy*, 757 F.2d at 1015(holding use of alias and travel sufficient to show willfulness), Nguyen's numerous misrepresentations and evasions

support the district court's determination that his breach was willful.

The second factor focuses on the Sureties' participation in apprehending the defendant. As sureties, Bui and Tracy Nguyen had one simple obligation—to assure Nguyen's appearance when promised. *United States v. Felix–Meza*, 825 F.2d 1334, 1336 (9th Cir.1987)(per curiam). It was their duty to learn whether he was in violation of the bond requirements, not the court's duty to give them notice. *United States v. Vera–Estrada*, 577 F.2d 598, 600 (9th Cir.1978).

Tracy Nguyen and Bui do not contest the fact that they played no role in Nguyen's eventual apprehension. The district court specifically found that Tracy Nguyen assisted not his apprehension, but his evasion. Although she talked with Nguyen frequently, she did nothing to assure his presence. Instead, she filed four motions to stay the surrender, none of which asserted any colorable grounds.

The evidence casts doubt on Bui's ignorance of Nguyen's evasion as well. Nguyen listed Bui's address as his residence, apparently deceptively, but Bui failed to correct the deception even after U.S. Marshals came to his house looking for Nguyen. Although it is not clear from the record whether the Sureties were aware of the full extent of Nguyen's shenanigans, there is substantial support for the district court's conclusion that they acted to hinder, not assist, his apprehension.

We cannot countenance the Sureties' argument that Tracy Nguyen's complicity in Nguyen's evasion is excused by her dual status as his lawyer and as a surety. To the extent she placed herself in a position of conflict, the circumstance was one of her own making. She agreed to represent Nguyen knowing that his failure to surrender could result in forfeiture of the bond that she had pledged. She cannot escape

her obligations as a surety simply by wrapping herself in the cloak of his attorney. The district court was within its discretion to conclude that this factor weighed heavily in favor of the government.

■■ The third factor looks to the cost, inconvenience, and prejudice suffered by the government as a result of the breach. Nguyen's evasion triggered a search and stakeout effort by the government. In addition, the government was forced to reply to multiple requests—as it turns out, disingenuous—to extend the surrender date. The Sureties' argument that the government had no costs because it cannot show overtime payments borders on frivolous. The government has no obligation to furnish a bill of costs, see *Sar–Avi*, 255 F.3d at 1168, nor can the cost and inconvenience factor be dismissed simply because they were not substantial.

■ The fourth consideration is the presence of mitigating factors, and the fifth is the surety's status.[1] The district court properly weighed Nguyen's apparent continued presence in the area, and the Sureties' nonprofessional status and family relationship, as mitigating factors but found these factors unpersuasive in light of Nguyen's egregious conduct, in which the Sureties were complicit.[2]

■■ The sixth and final factor among the non-exclusive considerations is the appropriateness of the bond amount. It is apparent from colloquy between counsel and the court that the district court considered this factor. Although we acknowledge that the amount was significant, we cannot say that it was excessive or that the district court's failure to exercise its discretion to lower the sum forfeited was reversible error. As we explained in *Amwest*, a bond functions like liquidated damages in that it must be reasonable when set; it need not necessarily approximate the actual costs of breach. 54 F.3d at 604. Indeed, in *United States v. Stanley*, we affirmed a forfeiture where there was no showing of specific cost or prejudice to the government, but, like here, there was a willful breach of conditions and an absence of mitigating circumstances. *United States v. Stanley*, 601 F.2d 380, 382(9th Cir.1979).

Nguyen was convicted of eleven counts of loan fraud for which he was sentenced to serve over two years in prison and pay $300,000 restitution. At the time, the court deemed him a flight risk and set the bond amount accordingly. The initial $50,000 bond was increased to $100,000 after his conviction. At the bond hearing, the district court concluded that "these conditions [including the amount] seem to me to be minimal in order to allow that he be released pending further proceedings." As in *Frias–Ramirez*, the court "found the amount of defendant's bail to have been appropriate in light of the nature of the offense...." 670 F.2d at 853.

There is no question that "the sureties entered the bonding agreement aware of the consequences...." *Id.* Regrettably,

---

1. The Sureties assert in passing that they were denied equal protection of the law, apparently because professional sureties are sometimes granted relief from forfeiture when they deliver the defendant into custody. To the extent this argument is cast as a separate claim, we decline to entertain it because no such claim was raised in the district court. *Int'l Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir.1985).

2. We decline to adopt, as the dissent apparently urges, a "loving relative" exception to our bond forfeiture jurisprudence. We believe that a loving relative, particularly an attorney, would be better advised to counsel her fugitive relation to obey, rather than ignore, court orders.

counsel's prediction that he did not "believe that Mr. Nguyen is going to put his [relatives] in the position of losing $50,000, much less a hundred thousand" turned out to be a hollow prophecy. Reviewing all the factors, particularly willfulness of Nguyen's breach, complicity of the Sureties, and absence of compelling mitigating circumstances, we conclude that the district court did not abuse its discretion in ordering forfeiture of the full amount of the bond.

AFFIRMED.

KLEINFELD, Circuit Judge, dissenting:

I agree that forfeiture was mandatory. The district court did not abuse its discretion in denying the motion to remit the forfeiture in its entirety. I disagree, though, on remission in part. There was no good reason to forfeit the entire amount of the bond. The district court did not give any reason at all for why the whole bond, not just part, should have been forfeited. The district court focused entirely on whether there should be a forfeiture, not on how much. Failure to remit in part was an abuse of discretion.

The $100,000 in security was probably designed to cover the expense of fetching Nguyen if he fled to a foreign country or otherwise put the government to great expense. But all Nguyen did was fail to show up at the marshal's office, and put the government to the minimal burden of telephoning and driving around town to get him. A hundred thousand dollars is a lot of money for doing nothing more than looking around town for less than three weeks before picking Nguyen up at his place of business and giving him a ride in a government car. Nguyen's sister-in-law and brother-in-law will probably both lose their homes because of the forfeiture. They are not the criminals in this case. It is tragic when people post bail for a family member in trouble, only to be ruined for their kindness when their kin jumps bail. Today's decision may affect a lot of common situations, as when people's children are arrested for drug crimes or their husbands or wives for drunk driving, embezzlement, or tax offenses. If bail is set high enough to catch an international fugitive, but all that happens is that the criminal fails to show up (the majority opinion says Nguyen "essentially thumbed his nose" but to me it looks more like panic about going to jail than insouciance) and is easily and locally caught, there is no good reason to forfeit so large an amount.

The district court had discretion to set aside the forfeiture or remit judgment on the forfeiture "in whole or in part" "if it otherwise appears that justice does not require the forfeiture."[1] What "justice requires" depends on the purpose of bail bonds. The purpose of bail bonds is to make sure defendants show up for court,[2] not to punish them or their families if they don't. Here, the record supports the district court's determination that Nguyen willfully failed to appear, but that does not answer the question of whether it was an abuse of discretion not to remit the forfeiture in part.

The district court's ruling did not speak to the amount of the forfeiture, as opposed to whether there ought to be a forfeiture. And the district court only addressed the

---

1. Fed.R.Crim.P. 46(e)(2) & (4) (2001).

2. *United States v. Vaccaro*, 51 F.3d 189, 192 (9th Cir.1995) ("[G]enerally the purpose of a bail bond is to insure that the accused will reappear at a given time.") (quoting *United States v. Toro*, 981 F.2d 1045, 1049 (9th Cir. 1992) (internal quotation marks and alteration omitted)); *United States v. Bass*, 573 F.2d 258, 260 (5th Cir.1978) ("The purpose of a bail bond is not punitive; it is to secure presence of the defendant.").

six factors we described in *United States v. Amwest Surety Insurance Co.*[3] as they applied to forfeiture, not as they applied to partial remission. The district judge explained why full remission was not appropriate, not why partial remission was not. We had previously described, in *United States v. Abernathy*[4] and *United States v. Frias–Ramirez,*[5] only four factors, and have since noted two more; the law of this circuit is that "[t]hese are merely non-exclusive factors for consideration...."[6] Because the district court's ruling did not address whether the six factors justify partial remission, and the record does not show that the district court considered partial remission, we cannot properly hold that it did not abuse its discretion in denying partial remission. We should remand the case so that the district court may consider partial remission pursuant to these and any other relevant factors.

In ruling on the forfeiture, the district court said that (1) "the Sureties failed to ensure defendant's appearance"; (2) "Surety Nguyen assisted and was complicit in defendant's willful efforts to avoid and extend his self-surrender date"; (3) "Ms. Nguyen was proactive in keeping Mr. Nguyen out of custody"; (4) "the government was put to significant cost and inconvenience in trying to locate defendant, having staked out his residence and his business." The district court did not explain why these factors justify a full $100,000 forfeiture rather than a remission down to, say, $5,000.

Also, reasons two and three, the "complicit" and "proactive" reasons, strike me as unjustified as a matter of law. Tracy Nguyen, besides being married to defendant Nguyen's brother, was his lawyer. The conduct that the district court characterized as "complicit" and "proactive" was her filing of court papers to get continuances of Nguyen's surrender date and avoid penalties for her client. It may have been imprudent to act as both surety for the defendant, in which role she would be best served by his being promptly locked up in jail, and as counsel for him, which gave her a duty to try to keep him out of jail and get him excused when he went for medical care on his troublesome nose instead of going to jail. But all she did to keep him out of jail was file papers and make representations in court, none of which have been found to be false. Language implying criminality or wrongfulness of a lawyer's conduct in trying to keep her client out of jail is misplaced.

Tracy Nguyen served her client better than she served herself. Many loving relatives—wives who in the wee hours bail out husbands arrested for drunk driving, parents who go surety for children facing drug charges—act imprudently in terms of their own interests, but such conduct ought not to be characterized as wrongful. Under *Amwest,* the district court should have considered whether the sureties' status as family members, rather than professionals, supported mitigating the forfeiture with partial remission,[7] but did not.

There is one factor that the district court ruling and the majority do not discuss, that ought to have been considered

---

**3.** 54 F.3d 601, 603 (9th Cir.1995).

**4.** 757 F.2d 1012, 1015 (9th Cir.), *cert. denied,* 474 U.S. 854, 106 S.Ct. 156, 88 L.Ed.2d 129 (1985).

**5.** 670 F.2d 849, 852 (9th Cir.), *cert. denied,* 459 U.S. 842, 103 S.Ct. 94, 74 L.Ed.2d 86 (1982).

**6.** *United States v. Sar–Avi,* 255 F.3d 1163, 1167 (9th Cir.2001). *Accord Amwest,* 54 F.3d at 603; *Abernathy,* 757 F.2d at 1015; *Frias–Ramirez,* 670 F.2d at 852.

**7.** *Amwest,* 54 F.3d at 603.

regarding remission (not forfeiture), and that is the expense of apprehending Nguyen. The majority says that the government need not provide itemized proof of expenses,[8] and that is correct.[9] But that proposition does not mean that the court should disregard the minimal financial burden to the government. Remission should be used to accomplish a rough proportionality between the extent of the forfeiture and the extent of the government's burden.[10]

We held in *Amwest* that one factor is "appropriateness of the amount of the bond," and that factor "looks more to the proper fixing of the amount of the bond" than to the cost of apprehension.[11] That is plainly correct when a court looks back to see whether bail was set too high. Bail was not set too high in this case. Nguyen spoke at least one foreign language and could have fled to a foreign country and been extremely difficult to re-apprehend. *Amwest* goes on to say that "bail bonds are contracts for liquidated damages,"[12] but that proposition can only be correct insofar as it speaks to appropriateness of the amount initially set as bail. Were it read more broadly, to mean that remission should not take into account subsequent events and expenses, then it would contra-

dict the federal rule which it construes. As the majority concedes, Federal Rules of Criminal Procedure 46(e)(2) and (4) provide that the district court may "remit ... in part" if "justice does not require" the entire amount to be forfeited.[13] Partial remission as provided for by the Rule could generally not be granted if the liquidated damages analogy controlled where the bail had not been mistakenly set too high. Where a liquidated damages provision in a contract is not invalid as a penalty, the specified amount can be recovered without regard to actual damages.[14] In *Amwest*, the bond was for $100,000, the surety was a professional[15] (not a relative, which we said in *Amwest* would have been a mitigating factor[16]), the defendant fled the jurisdiction[17] (Nguyen did not), and the government spent $37,000 to catch him[18] (Nguyen was easily and locally picked up), so the case should be distinguished on its facts.

In the Fourth Circuit, "a forfeiture should bear some reasonable relation to the cost and inconvenience to the government and the courts."[19] The Eighth Circuit uses the same language.[20] The "reasonable relationship" may allow for "a substantial forfeiture to deter," not just

---

**8.** Maj. Op. at 1116.

**9.** *See Sar–Avi*, 255 F.3d at 1168.

**10.** *See Accredited Surety & Casualty Co. v. United States*, 723 F.2d 368, 369–70 (4th Cir. 1983) ("'[A] forfeiture should bear some reasonable relation to the cost and inconvenience to the government and the courts."); *Appearance Bond Surety v. United States*, 622 F.2d 334, 337(8th Cir.1980) ("Moreover, [the] forfeiture ought to bear some reasonable relation to the cost and inconvenience to the government of regaining custody ....") (internal quotation marks omitted).

**11.** *Amwest*, 54 F.3d at 603–604.

**12.** *Id.* at 604.

**13.** Fed.R.Crim.P. 46(e)(2) & (4) (2001).

**14.** *See Restatement (Second) of Contracts* § 356 & comments a & b (1981).

**15.** *Amwest*, 54 F.3d at 604.

**16.** *Id.* at 603.

**17.** *Id.* at 602.

**18.** *Id.* at 603.

**19.** *Accredited Surety*, 723 F.2d at 369–70; *Jeffers v. United States*, 588 F.2d 425, 427 (4th Cir.1978); *United States v. Kirkman*, 426 F.2d 747, 752 (4th Cir.1970).

**20.** *Appearance Bond Surety*, 622 F.2d at 337(quoting *Kirkman*, 426 F.2d at 752).

reimbursement of government expense,[21] but it still requires a look at the amount relative to the circumstances at the time of the forfeiture.

Quite often it is reasonable to set a fairly high bail where there is a serious risk of flight that might put the government to great expense to apprehend the defendant. That was so here. The $100,000 bail was appropriate as an analog to liquidated damages, so remission was not required under the language in *Amwest*. Quite often as well, a defendant violates the bail order without imposing a great burden on the government, so there is no just purpose for imposing the entire forfeiture on some suffering relative who posted bail.

There are circumstances where we are supposed to follow some rigid law without regard to what is just in the particular circumstances. This is not one of them. The law itself, Federal Rule of Criminal Procedure 46(e)(2), says that the district court is supposed to remit the bond in whole or part "if it otherwise appears that justice does not require the forfeiture."[22]

Tracy Nguyen put herself financially at risk for a brother-in-law she sees once a year at Chinese New Year. The security she posted "is my only residence where I live with my husband and two small children." Bui is in the same situation, except that more family members (his wife, mother-in-law, and four children) live in the home to be forfeited. Justice does not require the draconian result imposed, and the district court did not consider the factors it is required to consider as they applied to partial remission, so we should remand for remission pursuant to those factors. We have a rule that instructs us to consider justice in the circumstances of the particular case, so we ought to do that, instead of construing the rule in a way that turns it into something blind and mechanical.

I respectfully dissent.

---

21. *Jeffers,* 588 F.2d at 427. *But see Kirkman,* 426 F.2d at 752 ("Forfeitures are not properly ordered for the purpose of enriching the government or to punish a defendant.").

